LOUISE B. HALL, PAUL B. HALL, LUTHER C. HAMMOND, DOROTHY S. HAMMOND AND THE LATTA ROAD NEIGHBORHOOD ASSOCIATION, INC. v. THE CITY OF DURHAM, LOWE'S INVESTMENT CORPORATION AND B,K,B, INC.

No. 16PA88

(Filed 6 October 1988)

**Municipal Corporations § 30.9— rezoning—invalid**

The rezoning of defendant's property from R-20 (single family residential) and C-1 (neighborhood commercial) to C-4(D) (heavy commercial with development planned) was invalid where the Durham City Council did not determine that the property was suitable for all uses permitted in the new general use district. When rezoning property from one general use district with fixed permitted uses to another general use district with fixed permitted uses, a city council must determine that the property is suitable for all uses permitted in the new general use district, even where it had additional authority to consider a development plan in passing upon a rezoning request and to require any submitted site plan to conform therewith. *Chrismon v. Guilford County,* 322 N.C. 611, which involved a rezoning from a general district to a conditional use district, is not applicable; moreover, this was not a case of illegal contract zoning because there was nothing in the record to show that a transaction occurred in which the city council undertook to obligate itself in any way to defendants. N.C.G.S. § 160A-381.

Justice WEBB concurring.

Justice MITCHELL joins in this concurring opinion.

ON defendants' petition for discretionary review pursuant to N.C.G.S. § 7A-31 of a decision of the Court of Appeals, 88 N.C. App. 53, 362 S.E. 2d 791 (1987), affirming the order of summary judgment in favor of plaintiffs entered by *Hobgood (Robert H.), J.,* at the 6 November 1986 Civil Session of Superior Court, DURHAM County. Heard in the Supreme Court 13 September 1988.

*Maxwell, Martin, Freeman and Beason, P.A., by James B. Maxwell and Alice Neece Moseley, for plaintiff-appellees.*

*Loflin & Loflin, by Thomas F. Loflin III and Dean A. Shangler, and Charles Darsie for defendant-appellants Lowe's and B,K,B, Inc.; Michaux & Michaux, by Eric Michaux, for defendant-appellant Lowe's; and Barrow & Redwine, by Phillip O. Redwine, for defendant-appellant B,K,B, Inc.*

MEYER, Justice.

Plaintiffs filed an action seeking a declaratory judgment concerning the validity of a rezoning amendment adopted by the Durham City Council (hereinafter "the Council"), which rezoned approximately 12.9 acres of land near the intersection of Roxboro and Latta Roads in Durham, North Carolina. Plaintiffs' complaint alleged that the rezoning was invalid because (1) the property was rezoned on a vote of 7 to 6 of the Council when a valid protest petition, filed pursuant to N.C.G.S. § 160A-385 on behalf of the residents of the neighborhood near the rezoned property, made a three-fourths majority vote by the Council necessary for the rezoning amendment's passage; (2) the rezoning was the product of illegal "contract zoning"; and (3) the rezoning violated the Durham 2005 Comprehensive Plan for development.

On 11 April 1986, a Temporary Restraining Order was granted to plaintiffs, which restrained the initiation and continuation of any use or activity inconsistent with the prior zoning on the property. On 16 April, plaintiffs were granted a preliminary injunction. Defendants moved for summary judgment. After a hearing on 3 November 1986, at which the trial court considered the pleadings, interrogatories, depositions, various exhibits and arguments of counsel, it entered summary judgment in favor of plaintiffs, concluding as a matter of law that the rezoning was invalid because the Council had engaged in illegal "contract zoning." However, the trial court ruled in favor of defendants on

the issue of the protest petition's validity. Plaintiffs conceded at the hearing that they could not prevail on their third claim concerning violation of the City's comprehensive development plan and, for that reason, the trial court's judgment did not address that issue.

Defendants Lowe's Investment Corporation (hereinafter "Lowe's") and B,K,B, Inc. appealed. Plaintiffs cross-assigned as error the trial court's determination that the protest petition was invalid. The Court of Appeals unanimously affirmed the trial court's conclusion that the Council had engaged in illegal contract zoning. The Court of Appeals did not reach plaintiffs' cross-assignment of error. We granted both defendants' petition and plaintiffs' cross-petition for discretionary review.

The property at issue, owned by defendant B,K,B, Inc., is an L-shaped piece of land adjacent to the Eno Square Shopping Center with frontage along Roxboro Road extending to within thirty feet of its intersection with Latta Road in Durham, as well as footage on Latta Road itself. The existing zoning of this land consists of a C-1 district (neighborhood commercial) on the approximately 6.3 acres of land fronting on Roxboro Road and an R-20 district (single family residential) on the approximately 6.6 acres fronting on Latta Road. The area surrounding the property at issue consists of residences, neighborhood stores and service establishments.

On 29 January 1986, defendants Lowe's and B,K,B, Inc. filed an application with the Durham City Department of Planning and Community Development to rezone the 12.9-acre tract from R-20 and C-1 to C-4(D) (heavy commercial with development plan). Lowe's proposed to use the land for operation of a "Home Center" consisting of four buildings, an outdoor lumber storage area and a parking lot. With the application Lowe's submitted a development plan showing the proposed physical site layout. The plan included a notation that approximately nine adjacent acres, zoned R-20 and not the subject of the rezoning proposal, would be deeded at the time of the development to the Eno River Association, an organization devoted primarily to the conservation of the Eno River and its environs. This acreage is in a flood plain. In addition, the rezoning application file contained a document entitled "Language to be Placed in Deed to Lowe's Investment Corporation." This

document described a reverter clause to be placed in the· deed from B,K,B, Inc. to Lowe's, stating that if Lowe's ceased to use the property for a lumberyard and home center, the title would vest in the Eno River Association, or if the Eno River Association no longer existed, then in the City of Durham.

The Planning and Zoning Commission's Staff Report, which was submitted to the Durham City Council, included a staff recommendation that the rezoning be denied. The "Staff Analysis" section of the Report discussed numerous reasons for the negative recommendation and concluded that the wide range of heavy commercial uses permitted under C-4 zoning would not be compatible with the surrounding residential and community-serving commercial areas. Those uses permitted under C-4 but not under R-20 or C-1 are as follows:

Adult entertainment
Building material sales and storage
Coal and wood lots
Correctional institutions
Crematoria
Drive-in theatres
Fairgrounds
Bulk storage of flammable liquids and gases
Sale, repair, rental, storage of heavy machinery
    and equipment
Mini-warehouses
Mobile home sales lots
Freight transportation terminals
Travel trailer and boat sales and service
Warehouses, storage, sales and services[.]

The Staff Analysis section of the Report noted that Lowe's development plan did not lessen the effect of introducing C-4 zoning to the land in question, because rezoning the property to C-4(D) "would set a precedent for heavy commercial zoning along Roxboro Road and Latta Road that could make it difficult to deny future requests for C-4 zoning." The Report also stated:

Although the development contains a notation that the adjacent R-20 land will be deeded to the Eno River Association, it is important to note that this property dedication is not a part of the development plan. The notation is for information

only and should not be considered in analysis of the rezoning request.

Despite the staff recommendation of a denial, the Planning and Zoning Commission voted to recommend that the Council approve defendants' rezoning request. The only explanation in the record for the favorable recommendation is contained in the Commission's "Comments" section at the end of the Staff Report, which states in part:

> [The] attorney for Lowe's, told the Commission that he has had two meetings with the neighborhood. As a result of those meetings, Lowe's has added a 30-foot landscaped buffer along Latta Road that will remain zoned R-20. Because the land slopes away from Latta Road, the proposed buildings will be hardly visible from the street. To improve traffic, Lowe's will restrict left turns onto Latta Road. In addition, a restriction would be placed on the deed which would require that the rear tract that [sic] would revert to the Eno River Association if Lowe's ceases to operate.

The Council held a public hearing on 7 April 1986, at which the discussion revealed a large number of residential neighbors opposed to the rezoning. The statements of those in favor of the rezoning related to the proposed development, its preferability to some other development, and Lowe's attempts to accommodate community interests. In highlighting the company's efforts in this direction, Lowe's attorney stated in part:

> We [Lowe's] were also concerned about protecting the crooked creek — the dedicating open space to non-profit groups, working with the landowners and also to immediately upon approval of this rezon[ing] to actually deed over to [sic] the property to Eno River Association (approximately 9 acres). We asked for a C-4(D) plan with unprecedented action by Lowe's Inc. The property used nearest Latta Road — once Lowe's has completed its use on that property, that that [sic] property would in fact go over to the Eno River Association.

Following the public hearing, the Council discussed the matter and voted 7 to 6 to rezone the property.

The Court of Appeals concluded that (1) rezoning may not be based either on assurances that the applicant will make a specific

use of the property, or on any other representations of the applicant, and (2) rezoning must take into consideration whether the land is suitable for all permitted uses under the new classification. Because the Council considered a proposed development plan as well as collateral representations as to the future use of the rezoned site and did not determine the suitability of the land for other C-4 uses, the court held that the challenged rezoning constituted unlawful contract zoning. Although we disagree that the rezoning amounted to contract zoning in this instance, we nevertheless affirm the opinion of the Court of Appeals because of the failure of the City Council to consider whether the land was suitable for all uses permitted in the C-4(D) district.

This Court recently defined illegal contract zoning in *Chrismon v. Guilford County*, 322 N.C. 611, 370 S.E. 2d 579 (1988):

> Illegal contract zoning properly connotes a transaction wherein both the landowner who is seeking a certain zoning action and the zoning authority itself undertake reciprocal obligations in the context of a *bilateral* contract. Shapiro, *The Case for Conditional Zoning*, 41 Temp. L.Q. 267 (1968); D. Mandelker, *Land Use Law* § 6.59 (1982). One commentator provides as illustration the following example:
>
>> A Council enters into an agreement with the landowner and then enacts a zoning amendment. *The agreement, however, includes not merely the promise of the owner to subject his property to deed restrictions; the Council also binds itself to enact the amendment and not to alter the zoning change for a specified period of time.* Most courts will conclude that by agreeing to curtail its legislative power, the Council acted ultra vires. Such contract zoning is illegal and the rezoning is therefore a nullity.
>
> Shapiro, *The Case for Conditional Zoning*, 41 Temp. L.Q. 267, 269 (1968) (emphasis added).

*Id.* at 635, 370 S.E. 2d at 593. As defendants point out in their brief, this impermissible type of contract zoning depends upon a finding of a transaction in which both the landowner seeking a rezoning and the zoning authority undertake reciprocal obligations. In short, a "meeting of the minds" must occur; mutual

assurances must be exchanged. A typical example of such recipro-
cal assurances occurs when the applicant assures the city council
that the property will be used only for a specified purpose and no
other, and the city council, in consideration of such assurance,
agrees to rezone the property in question and not to alter the
zoning for a specified period of time thereafter. Defendant Lowe's
*did* make representations or offer assurances to the Council—the
acreage to be deeded to the Eno River Association upon rezoning
and the reverter clause in the deed from B,K,B to Lowe's—but
the record is barren of even a hint that the Council made any
assurances in return. No meeting of the minds took place here,
and no reciprocal assurances were made by the Council. We can
discern nothing in the record to show that a transaction occurred
in which the City Council undertook to obligate itself in any way
to defendants. This is not therefore a case of illegal contract zon-
ing.

In their brief, defendants argue that when a zoning authority,
without committing its own power, secures an agreement from a
property owner to subject his tract to certain restrictions as a
prerequisite to rezoning, this is merely an instance of orthodox
conditional zoning. At oral argument before this Court, defend-
ants relied heavily on our recent decision in *Chrismon v. Guilford
County,* 322 N.C. 611, 370 S.E. 2d 579, to bolster this contention.
In *Chrismon,* defendant Clapp had been operating a business con-
sisting of storing and selling grain, and selling and distributing
agricultural chemicals on a tract of land adjacent to his residence
since 1948. In 1964, Guilford County adopted a zoning ordinance
which zoned Clapp's tract and an extensive area surrounding it as
"A-1 Agricultural." The storage and sale of grain was a permitted
use under the new classification, but the sale and distribution of
agricultural chemicals was not. Clapp was permitted to continue
the sale of agricultural chemicals on the land adjacent to his
residence, even though it was a nonconforming use, because the
activity preexisted the ordinance, but he could not expand this
element of his business. Plaintiffs bought a lot from Clapp next to
an additional tract that he owned. In 1980, Clapp expanded his ac-
tivities onto the land next to plaintiffs' residence. After plaintiffs
filed a complaint with the Guilford County Inspections Depart-
ment, Clapp applied to have both the tracts rezoned to "Condi-
tional Use Industrial District." He also applied for a conditional

use permit, in which he specified that he would use the property as it was then being used and listed the improvements he wished to make in the ensuing years. The Guilford County Planning Board approved Clapp's request. After a public hearing, the Guilford County Board of Commissioners voted to rezone the tracts from Agricultural to Conditional Use Industrial District and to approve the conditional use permit application.

In *Chrismon*, this Court stated that the practice of conditional use zoning is one of several vehicles by which zoning flexibility can be and has been acquired by zoning authorities. We explained that

> [c]onditional use zoning anticipates that when the rezoning of certain property within the general zoning framework . . . would constitute an unacceptably drastic change, such a rezoning could still be accomplished through the addition of certain conditions or use limitations. Specifically, conditional use zoning occurs when a governmental body, without committing its own authority, secures a given property owner's agreement to limit the use of his property to a particular use or to subject his tract to certain restrictions as a precondition to any rezoning. D. Hagman & J. Juergensmeyer, *Urban Planning and Land Development Control Law* § 5.5 (2d ed. 1986); Shapiro, *The Case for Conditional Rezoning*, 41 Temp. L.Q. 267 (1968).

*Chrismon v. Guilford County*, 322 N.C. at 618, 370 S.E. 2d at 583-84. We held that the practice of conditional use zoning is an approved practice in North Carolina, so long as the action of the local zoning authority in accomplishing the zoning is reasonable, neither arbitrary nor unduly discriminatory, and in the public interest. *Id.* at 617, 370 S.E. 2d at 583. We approved the conditional use rezoning of Clapp's tracts.

Conditional use zoning authorized by N.C.G.S. § 160A-382 requires the consent of all the property owners within the area to be rezoned, and the only use which can be made of the land which is conditionally rezoned is that which is specified in the conditional use permit. Rezoning from one general use district with listed permitted uses to another general use district does not require the consent of such property owners and does not limit the future use of the property to a specific use, but allows changes

from one permitted use to any other use permitted in the new zone.

Although defendants make a spirited attempt to use *Chrismon* to support their contention that the situation here is a type of conditional use zoning, their reliance on that decision is misplaced. Defendant Lowe's rezoning application requested the Durham City Council to approve a change from an R-20 (single family residential) district and a C-1 (neighborhood commercial) district to a C-4(D) (heavy commercial with development plan) district. R-20, C-1 and C-4 are all distinct *general* zones or districts, with fixed specific permitted uses applicable to each. In *Chrismon*, the Court of Appeals improperly relied upon our decision in *Allred v. City of Raleigh*, 277 N.C. 530, 178 S.E. 2d 432 (1971), in concluding that Guilford County's zoning ordinance was an instance of both illegal "spot zoning" and illegal "contract zoning." We pointed out in our *Chrismon* opinion that *Allred* was a *general* use zoning case, not a conditional use zoning case as *Chrismon* was. Because defendants here sought a rezoning of two distinct *general* zoning districts (R-20 and C-1) to one *general* zoning district (C-4(D)), *Chrismon*, as a case involving rezoning from a general district to a conditional use district, is inapplicable.

Since this case involves a rezoning from two general use zones with fixed permitted uses to another general use zone with fixed permitted uses, the Court of Appeals correctly relied upon *Allred v. City of Raleigh*, 277 N.C. 530, 178 S.E. 2d 432, in concluding that the Durham City Council's decision to rezone B,K,B's property was improper. In *Allred*, the City of Raleigh adopted a comprehensive zoning ordinance under which the city was divided into thirteen classes of districts or zones, including five residential districts or zones designated R-4, R-6, R-10, R-20 and R-30. A 9.26-acre tract, zoned as R-4, was conveyed to the corporate defendant in 1965. Large areas lying north, west and southwest and a smaller area lying south of the tract were all zoned R-4. R-4 zones were restricted to single family dwelling units with the exception of townhouse and unit-ownership developments on tracts of fifty or more acres. In 1965, the corporate defendant filed an application to have the property rezoned from R-4 to Shopping Center. This application was denied. In 1967, the defendant filed a second application requesting that the zoning be changed from R-4 to R-10, to accomplish its desire to use the property for

"apartment-type dwellings." R-10 zones permitted, among other things, apartment houses, hospitals, rest homes, rooming houses and clubs operated by civic organizations. Upon the recommendation of the Raleigh Planning Commission, the Raleigh City Council again denied the application. In 1968, the defendant filed a third application, again requesting a rezoning from R-4 to R-10. The City Council and the Planning Commission held a public hearing at which a planning consultant for the corporate defendant presented a development study of the project, showing defendant's plans to build luxury apartments in twin high-rise towers. The Planning Commission studied the presentation, but ultimately recommended denying the application on the grounds that the rezoning would constitute "spot zoning" to the detriment of the surrounding residential areas, even though the Commission had "enthusiasm for such a project." *Id.* at 537, 178 S.E. 2d at 436. The Raleigh City Council held a meeting at which the discussion focused on the proposed luxury type apartments, the undeveloped areas around the property, the traffic that would be generated and the possibility that the corporate defendant would not build the apartments as planned. The defendant's president assured the City Council that he intended to go ahead with the project as this had been a dream of his for a long time. *Id.* at 539, 178 S.E. 2d at 436. The Council voted to rezone defendant's property.

This Court stated that the minutes of the Raleigh Planning Commission and the City Council showed beyond doubt that the Council did not determine that the property and the existing circumstances justified the rezoning so as to permit *all* uses permissible in an R-10 district. On the contrary, the grounds for the City Council's action was its approval of the specific plans to construct the luxury apartments in twin high-rise towers. *Id.* at 544-45, 178 S.E. 2d at 440. The Court reasoned:

> We assume the City Council was fully justified in accepting the assurances of the applicant that the 9.26-acre tract would be developed in accordance with the particular and impressive plans submitted to the Planning Commission and to the City Council. However, "(i)n enacting a zoning ordinance, a municipality is engaged in legislating and not in contracting." *Marren v. Gamble,* [237 N.C. 680] at 684, 75 S.E. 2d [880] at 883, and cases cited [therein]. Without suggesting that the particular applicant would not keep faith with the City Coun-

cil, if the zoning is changed from R-4 to R-10 the owner of the 9.26-acre tract will be legally entitled to make any use thereof permissible in an R-10 zone.

*Id.* at 545, 178 S.E. 2d at 440 (citations omitted). *See also Blades v. City of Raleigh*, 280 N.C. 531, 550, 187 S.E. 2d 35, 46 (1972) (amending ordinance adopted solely because applicant convinced City Council that property would be used for construction of townhouses; if ordinance were valid, it would permit use of property for any purpose permitted in particular district).

*Allred v. City of Raleigh*, 277 N.C. 530, 178 S.E. 2d 432, is directly applicable to the case *sub judice.* Defendants B,K,B, Inc. and Lowe's applied to have the property rezoned from single family residential and neighborhood commercial districts to the heaviest commercial district available. To palliate this request, Lowe's made several assurances to the Durham City Council. The site plan contained a notation that approximately nine acres of land would be gratuitously deeded to the Eno River Association. At the public hearing, counsel for Lowe's drew attention to the thirty-foot buffer on Latta Road which was to be left zoned R-20 and to the reverter clause to be inserted in the deed from B,K,B, Inc. to Lowe's. The minutes of the Council's discussion after the hearing show that at least one Council member was persuaded to vote in favor of the rezoning application by these assurances. The member stated:

> The *key* here is something that I have never heard of before—these people [B,K,B, Inc. and Lowe's] are adding a "covenant" to the deed that says that if Lowe's does anything else other than what they are saying they are going to do with this land tonight, that land *must* go to the Eno River Association or some such group—not "may" go, "MUST" go. Nothing else can be done, as I understand it with this land except exactly what these people say tonight. I will support this tonight.

As we noted under similar circumstances in *Allred*, without suggesting that B,K,B, Inc. and Lowe's would renege on their assurances, if the zoning were legally changed from R-20 and C-1 to C-4, then the owner of the property would be legally entitled to make any use of it consistent with any of the uses permitted in a C-4 zone. The minutes reveal further that several Council

members were more concerned with the validity of the home-owners' protest petition than with a discussion of the full range of uses permitted to Lowe's under a C-4 zone. Some, but not all, of the permitted uses were mentioned only once, almost in passing, as follows:

> If we do, do C-4 zoning down Latta Road, there will be fur-ther commercial rezoning requests down Latta Road. Right now that area is residential. This C-4 zoning includes adult entertainment, correctional institutions, mobil [sic] homes, flammable liquids and gases, fairgrounds, etc. We are talking about setting precedents in two very important areas (1) the precedent regarding the tactic of getting around the protest petition and (2) we will be setting a precedent of commercial zoning on this site.

Nothing further appears in the minutes of the Council's meeting concerning the range of uses in a C-4 zone, most of which are in-compatible with a single family residential area with its concomitant neighborhood service establishments. The uses were, quite simply, not discussed. In *Allred* we concluded:

> In our view, and we so hold, the zoning of the property may be changed from R-4 to R-10 only if and when its loca-tion and the surrounding circumstances are such that the property should be made available for *all* uses in an R-10 district. Rezoning on consideration of assurances that a par-ticular tract or parcel will be developed in accordance with restricted approved plans is not a permissible ground for placing the property in a zone where restrictions of the nature prescribed are not otherwise required or con-templated.

*Id.* at 545, 178 S.E. 2d at 440-41 (emphasis added). By failing to consider whether the property was suitable for *all* the C-4 uses, the Council's vote to rezone the land was invalid.

Since this Court decided *Allred* and *Blades v. City of Raleigh,* 280 N.C. 531, 187 S.E. 2d 35, the legislature has enacted chapter 671, section 92 of the 1975 North Carolina Session Laws, which authorizes the Durham City Council to act as follows:

> *Development Plans and Site Plans.*—In exercising the zoning power granted to municipalities by G.S. 160A-381, the City

Council may require that a development plan showing the proposed development of property be submitted with any request for rezoning of such property. The City Council may consider such development plan in its deliberations and may require that any site plan subsequently submitted be in conformity with any such approved development plan.

1975 N.C. Sess. Laws ch. 671, § 92. Defendant Lowe's submitted such a plan with its rezoning application. It now argues that the designation C-4(D) (heavy commercial with development plan) is crucial, because the Session Law constitutes enabling legislation which authorizes the Council to consider the developer's specific representation concerning the property without requiring the Council to consider the property's suitability for the other uses permitted in a C-4 district. We disagree. The enabling legislation which authorizes a city to regulate the uses of property is N.C.G.S. § 160A-381, wherein the legislature specified that zoning actions by a city must be "[f]or the purpose of promoting health, safety, morals, or the general welfare of the community." N.C.G.S. § 160A-381 (1987). Chapter 671, section 92 simply permits the Council to consider development plans in its deliberations on zoning decisions. Section 92 specifically refers to the enabling act, N.C.G.S. § 160A-381, and thereby incorporates that statute's limitations on the exercise of zoning power granted to municipalities.

We hold that when rezoning property from one general use district with fixed permitted uses to another general use district with fixed permitted uses, a city council must determine that the property is suitable for all uses permitted in the new general use district, even where it has additional authority to consider a development plan in passing upon a rezoning request and to require any submitted site plan to conform therewith. This the Durham City Council did not do. The rezoning of defendants' property from R-20 and C-1 to C-4(D) is therefore invalid.

In view of our disposition of this case, we do not address the issue raised by plaintiffs' cross-petition. The decision of the Court of Appeals is

Affirmed.

Justice WEBB concurring.

I concur in the result reached by the majority but I do not agree with its reasoning. I believe the Court of Appeals was correct in its conclusion that the action taken by the City Council in this case was illegal contract zoning under *Blades v. City of Raleigh*, 280 N.C. 531, 187 S.E. 2d 35 (1972) and *Allred v. City of Raleigh*, 277 N.C. 530, 178 S.E. 2d 432 (1971). The majority in this case and in *Chrismon v. Guilford County*, 322 N.C. 611, 370 S.E. 2d 579 (1988), quotes from a law review article to the effect that a zoning authority must bind itself not to alter the zoning change for a specified period of time in order to have contract zoning. I have read *Blades* and *Allred* in vain to find any such requirement. I believe the majority in this case and in *Chrismon* have overruled *Blades* and *Allred* without saying so.

I believe *Blades* and *Allred* stand for the proposition that zoning authorities prior to the adoption of N.C.G.S. § 153A-342 and N.C.G.S. § 160A-382 did not have the authority to contract zone. It is hard to imagine a case in which a zoning authority will bind itself not to change a zoning law. In fact it is doubtful a zoning authority has such power. For that reason I believe the majority has eliminated the ban on contract zoning in this state. This is regrettable because it can be a useful tool in protecting property owners from exceptions to the zoning laws which protect their property.

I would hold in this case that the Durham City Council has engaged in illegal contract zoning and the zoning change is void.

Justice MITCHELL joins in this concurring opinion.