KIRBY BUILDING SYSTEMS, INC., A TEXAS CORPORATION v. MONROE E. McNIEL, DEFENDANT AND THIRD-PARTY PLAINTIFF v. JERRY W. FOLEY, D/B/A FOLEY CONSTRUCTION COMPANY AND JAMES O. MORTON, JR. AND WIFE, REBECCA P. MORTON, THIRD-PARTY DEFENDANTS

No. 222PA89

(Filed 26 July 1990)

### 1. Judgments § 6 (NCI3d)— correction of judgment nunc pro tunc—after oral notice of appeal—jurisdiction

The trial court had jurisdiction to issue *nunc pro tunc* orders on 14 April 1986 in an action which began when plaintiff Kirby Building Systems, Inc. filed an action against McNiel for breach of contract; McNiel answered and filed a third-party complaint against defendants Foley and the Mortons alleging that he had acted as an agent of the third-party defendants; Foley answered that all of his dealings with plaintiff Kirby were as an agent for the Mortons and cross-claimed against the Mortons; evidence in the case was first presented on 11 February 1986; the judge at the close of McNiel's evidence orally stated that he would grant McNiel's motion to dismiss Kirby's claim and ordered McNiel to draw the order but made no formal findings of fact or conclusions of law; the clerk did not record any judgment or order of any kind in the court minutes; Kirby gave oral notice of appeal in open court but undertook no further action; the parties stipulated that judgment could be signed out of term; the trial judge on his own motion filed a *nunc pro tunc* order on 26 February 1986 rescinding the 12 February 1986 order and directing that the case be calendared for further testimony at his next term; the

judge at that time was no longer holding court in that county and his session of court there had ended; following conclusion of evidence after the April hearing, the trial judge announced that he would enter judgment for plaintiff against defendant McNiel and for third-party plaintiff McNiel against third-party defendants; and other *nunc pro tunc* orders disposing of the various claims were subsequently filed. The parties had stipulated that the trial court could sign its judgment out of term and the trial judge made findings and conclusions as required in that the judge specifically found in its first *nunc pro tunc* order that the ends of justice would be more reasonably served by permitting the third-party defendants the opportunity to present their case prior to ruling on defendant McNiel's motion to dismiss and concluding as a matter of law that the case should be continued until the next available nonjury session. By determining in the *nunc pro tunc* order that justice required a denial of defendant McNiel's motion to dismiss, the trial judge nullified his prior ruling rendered in favor of the defendant and the notice of appeal given by plaintiff Kirby was ineffective to wrest jurisdiction from the trial court. N.C.G.S. § 1A-1, Rule 41(b), N.C.G.S. § 1A-1, Rule 52(a)(1).

**Am Jur 2d, Judgments §§ 186 et seq.**

2. **Principal and Agent § 1 (NCI3d)— construction of bowling alley—purchase of materials—agency of purchaser**

The evidence supported the trial judge's findings that defendant McNiel was the buyer of building materials from plaintiff Kirby where McNiel signed the purchase order at issue as "buyer"; all accounts, contracts, purchase order supplements, invoices, statements, bills of lading, and other documents were in the name of defendant McNiel individually; plaintiff Kirby delivered the goods; and defendant McNiel himself acknowledged at trial that he could see how Kirby could have looked to his credit. Although third-party defendant Foley apparently telephoned change orders to Kirby, Kirby believed that Foley was an employee of McNiel and that Foley had the authority from McNiel to make changes; there was no intent on the part of Kirby to substitute a new debtor with the intent to release the prior one.

**Am Jur 2d, Agency §§ 21, 316 et seq.**

3. **Principal and Agent § 1 (NCI3d)— construction of bowling alley — purchaser of materials — agency**

There was adequate evidence to support the trial judge's finding that McNiel was in fact acting as an agent for the Mortons where McNiel purchased materials to use in the construction of a bowling alley; the Mortons were the lessees of the land on which the bowling alley was to be built; James O. Morton, Jr. and Rebecca P. Morton were not only husband and wife, but were partners doing business as Carteret Lanes; both parties signed the construction financing loan, the lease for the land on which the building was to be constructed, and the contract with Foley, the construction contractor; and McNiel and Foley stated that they were acting as agents for the Mortons.

**Am Jur 2d, Agency § 21.**

On petition for certiorari granted 19 October 1989, reviewing a 14 April 1986 judgment entered by *Barefoot, J.*, sitting without a jury in Superior Court, CARTERET County. Heard in the Supreme Court 13 March 1990.

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, by Susan M. Parker, for plaintiff-appellant.*

*Wheatly, Wheatly, Nobles, Weeks & Wainwright, P.A., by C.R. Wheatly, III, for defendant and third-party plaintiff-appellee.*

*Bailey & Dixon, by Gary S. Parsons and Patricia P. Kerner, for third-party defendant-appellees James O. and Rebecca P. Morton.*

MEYER, Justice.

In this case we decide that the 14 April 1986 decision of the trial court should be affirmed. Because our decision is in large measure one based upon a procedural matter, we set out the posture of the case at some length.

Plaintiff Kirby Building Systems, Inc. (hereinafter Kirby) is a supplier of prefabricated structural steel and sheet metal building materials. Kirby alleged that defendant McNiel ordered Kirby products for use in the construction of a bowling alley. Kirby delivered the materials and invoiced the order to McNiel. Having never received payment, Kirby instituted this action against McNiel for

KIRBY BUILDING SYSTEMS v. McNIEL

[327 N.C. 234 (1990)]

breach of contract in the amount of $64,723.12, plus interest and attorney's fees.

McNiel answered and filed a third-party complaint against defendants Jerry Foley (hereinafter Foley) and James and Rebecca Morton (hereinafter the Mortons). McNiel alleged that he had met with plaintiff as an agent of the third-party defendants. Foley was the construction contractor on this project, and the Mortons were the lessees of the land on which the bowling alley was to be built. McNiel sought indemnification from the third-party defendants in the event that he should be adjudged liable to Kirby.

Foley answered that all his dealings with Kirby were as agent for the Mortons. He also cross-claimed against the Mortons, alleging that they had failed to pay the amount due him under the construction contract.

The Mortons denied that either Foley or McNiel had acted as their agent in dealing with Kirby. They also denied owing any payments to Foley under their contract for the construction of the building.

Evidence in the case was first presented before Judge Barefoot on 11 February 1986. At the close of McNiel's evidence on 12 February 1986, the judge orally stated that he would grant McNiel's motion to dismiss Kirby's claim and ordered McNiel to "draw your order." The court made no formal findings of fact or conclusions of law at that time, nor did the clerk record any judgment or order of any kind in the court minutes. Kirby gave oral notice of appeal in open court but undertook no further action necessary to perfect such appeal. The parties stipulated that judgment could be signed out of term. Kirby subsequently moved that the trial judge make findings of fact and conclusions of law.

However, in a *nunc pro tunc* order signed 19 February 1986 and filed 26 February 1986, Judge Barefoot on his own motion rescinded his 12 February 1986 order and directed that the case be calendared for further testimony at his next term in Carteret County, beginning 14 April 1986. Public records indicate that Judge Barefoot held court in Carteret County from 10 February 1986 until 14 February 1986. Thus, at the time he signed the *nunc pro tunc* order on 19 February 1986, the judge was no longer holding court in Carteret County, and his session of court there had ended.

Following the conclusion of all evidence after the April 1986 hearing, the trial judge announced he would enter judgment for the plaintiff against defendant McNiel and for third-party plaintiff McNiel against the third-party defendants. On 4 December 1986, Judge Barefoot filed a judgment signed 1 December 1986 *nunc pro tunc* to 14 April 1986 dismissing with prejudice Foley's cross-claim against the Mortons. On that same day, he filed a judgment dated 6 December 1986 *nunc pro tunc* to 14 April 1986 in favor of Kirby against McNiel. A subsequent judgment filed 22 December 1986 and signed 18 December 1986 *nunc pro tunc* to 14 April 1986 gave McNiel the right of indemnification from third-party defendants Mortons and Foley. Though all third-party defendants gave oral notice of appeal, no party in fact perfected an appeal. The Court of Appeals allowed the Mortons' petition for writ of certiorari on 14 December 1987 to review the judgments entered 14 April 1986 and signed in December of that year.

On appeal, the Court of Appeals concluded in a unanimous unpublished opinion, 91 N.C. App. 444, 372 S.E.2d 581 (1988), that the trial court lacked jurisdiction to enter judgments arising from the 14 April 1986 hearing. The Court of Appeals reasoned that plaintiff's unperfected oral notice of appeal following the dismissal of plaintiff's case on 12 February 1986 deprived the trial court of jurisdiction to rescind subsequently and out of session its granting of the motion to dismiss. Accordingly, the Court of Appeals vacated the judgments entered after the 12 February 1986 judgment appealed from. The Court of Appeals declined to consider the merits of the February 1986 dismissal on the grounds that (1) Kirby had failed to properly perfect its appeal and (2) the issue was not before the court by certiorari. This Court denied the plaintiff's petition for discretionary review on 4 January 1989. 323 N.C. 704, 377 S.E.2d 224 (1989).

On 7 April 1989, Kirby filed a petition for writ of certiorari with the Court of Appeals to review the order of 12 February 1986. The Court of Appeals denied this petition. On 27 June 1989, this Court granted plaintiff's petition for certiorari to review the denial of certiorari by the Court of Appeals. 325 N.C. 431, 381 S.E.2d 774 (1989). On 20 October 1989, we allowed the Mortons' petition for the limited purpose of directing that the Court would consider the whole record and would permit the parties to assign error to such portions of the entire record as they deemed appropriate.

Initially, we conclude that Judge Barefoot in effect vacated the February 1986 ruling. We come to this conclusion after first determining that Kirby gave notice of its intent to appeal, which ordinarily would have removed the case from the jurisdiction of the trial court.

[1] Prior to a recent amendment to Rule 3 of the Rules of Appellate Procedure, oral notice of appeal was appropriate as soon as the trial court rendered a judgment. N.C.R. App. P. 3(a) (1989); N.C.G.S. § 1-279 (1983).[1] If a party did not give oral notice of appeal but decided at a later date to appeal a judgment, appeal from the judgment had to be taken within ten days after its entry. N.C.R. App. P. 3(c) (1989); N.C.G.S. § 1-279 (1983). Specifically, these provisions stated in relevant part:

> (a) From Judgments and Orders Rendered in Session. Any party entitled by law to appeal from a judgment or order of a superior or district court *rendered* in a civil action or special proceeding during a session of court may take appeal by
>
> (1) giving oral notice of appeal at trial . . . ; or
>
> (2) filing notice of appeal with the clerk of superior court and serving copies thereof upon all other parties within the time prescribed by subdivision (c) of this rule.
>
> . . . .
>
> (c) Time When Taken by Written Notice. If not taken by oral notice as provided in Rule 3(a)(1), appeal from a judgment or order in a civil action or special proceeding must be taken within 10 days after its *entry.*

N.C.R. App. P. 3(a), (c) (1989) (emphasis added). See also N.C.G.S. § 1-279, which is virtually identical. *Giannitrapini v. Duke University*, 30 N.C. App. 667, 669, 228 S.E.2d 46, 47 (1976). Rule 3 and N.C.G.S. § 1-279 draw a distinction between judgments "rendered" and judgments "entered."

To render judgment means to "pronounce, state, declare, or announce" judgment. Black's Law Dictionary 1165 (rev. 5th ed.

---

1. Amendments to Rule 3, effective 1 July 1989, deleted the right to give oral notice of appeal. The legislature repealed N.C.G.S. § 1-279 effective 1 July 1989. These changes apply to all judgments of the district or superior court entered on or after the effective date and thus do not affect the issues before us today.

1979). Rendering judgment is "not synonymous with 'entering' . . . the judgment. Judgment is 'rendered' when [the] decision is officially announced, either orally in open court or by memorandum filed with [the] clerk." *Id.; Provident Finance Co. v. Locklear*, 89 N.C. App. 535, 537, 366 S.E.2d 599, 600 (1988). *See also* N.C.G.S. § 1A-1, Rule 58 (1983) (where judgment is rendered, the clerk's notation shall constitute entry for the purposes of the Rules of Civil Procedure). Thus, the plain language of the Rules of Appellate Procedure requires no formal entry of a written judgment or clerk's notation before notice of appeal is effective to divest the trial court of jurisdiction.

The trial judge stated orally that he was going to allow McNiel's motion to dismiss. Plaintiff Kirby immediately gave oral notice of appeal. In the *nunc pro tunc* order, the trial judge stated that the "Court granted the Defendant McNiel's motion" to dismiss. We thus conclude that the trial court rendered a judgment[2] and that the plaintiff's oral notice of appeal was effective.

As a general rule, an appeal removes a case from the jurisdiction of the trial court. Pending the appeal, the trial judge is *functus officio*, subject to two exceptions and one qualification.

> The exceptions are that notwithstanding the pendency of an appeal the trial judge retains jurisdiction over the cause (1) during the session in which the judgment appealed from was rendered and (2) for the purpose of settling the case on appeal. The qualification to the general rule is that "the trial judge, after notice and on proper showing, may adjudge the appeal has been abandoned" and thereby regain jurisdiction of the cause.

*Bowen v. Motor Co.*, 292 N.C. 633, 635-36, 234 S.E.2d 748, 749 (1977) (quoting *Machine Co. v. Dixon*, 260 N.C. 732, 735-36, 133 S.E.2d 659, 662 (1963)). Abandonment of an appeal exists only where there is express notice, showing, and judgment of abandonment of appeal. Only then does the appeal cease to be pending. *Bowen v. Motor Co.*, 292 N.C. 633, 234 S.E.2d 748.

---

2. We note parenthetically that the Court of Appeals in its unpublished opinion stated that judgment had been entered. This proved to be inaccurate, as the clerk filed with this Court an affidavit and an actual certified copy of the minutes of the session to the effect that the judgment had not been entered nor any notation made by the clerk.

## KIRBY BUILDING SYSTEMS v. McNIEL

[327 N.C. 234 (1990)]

The record shows that the session ended before the trial judge signed and filed the *nunc pro tunc* order. The record also indicates that there was neither notice of abandonment of appeal nor showing and judgment of any such abandonment.

However, the parties stipulated that the trial court could sign its judgment out of term. Rule 41(b) of the North Carolina Rules of Civil Procedure states that "[i]f the court renders judgment on the merits against the plaintiff, the court *shall* make findings as provided in Rule 52(a)." N.C.G.S. § 1A-1, Rule 41(b) (1983) (emphasis added). Rule 52(a)(1) of the North Carolina Rules of Civil Procedure states that "[i]n all actions tried upon the facts without a jury or with an advisory jury, the court *shall* find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment." N.C.G.S. § 1A-1, Rule 52(a)(1) (1983) (emphasis added). The requirement to make findings of fact and conclusions of law is mandatory, and a failure to do so is grounds for granting a new trial. *O'Grady v. Bank*, 296 N.C. 212, 218, 250 S.E.2d 587, 592 (1978); *Helms v. Rea*, 282 N.C. 610, 618, 194 S.E.2d 1, 7 (1973); *Bank v. Easton*, 12 N.C. App. 153, 182 S.E.2d 645, *cert. denied*, 279 N.C. 393, 183 S.E.2d 245 (1971).

The trial judge in this case specifically found in his *nunc pro tunc* order "that the ends of justice would be more reasonably served by permitting . . . Third-Party Defendants [Foley and the Mortons] opportunity to present their case prior to the Court's ruling on the Defendant McNiel's motion to dismiss." The judge concluded as a matter of law that the cause should be continued until the next available nonjury session of Carteret County Superior Court. The findings of fact and conclusions of law entered by the trial judge supported denial of a motion to dismiss.

The trial judge having made findings of fact and conclusions of law as required by statute and as stipulated to by the parties, it is our duty to determine whether the findings of fact were supported by the evidence and whether those findings support the conclusions of law. *In re Montgomery*, 311 N.C. 101, 110-11, 316 S.E.2d 246, 252-53 (1984); *Williams v. Insurance Co.*, 288 N.C. 338, 343, 218 S.E.2d 368, 371 (1975). Examination of the record reveals that evidence to support the findings does exist and that the conclusions of law are supported by the findings.

KIRBY BUILDING SYSTEMS v. McNIEL

[327 N.C. 234 (1990)]

By determining in the *nunc pro tunc* order that justice required a denial of defendant McNiel's motion to dismiss, the trial judge nullified his prior ruling rendered in favor of the defendant. There can be no appeal where there is no judgment. Thus, the notice of appeal given by plaintiff Kirby was ineffective to wrest jurisdiction from the trial court.

Consequently, we hold that under the peculiar facts of this case, where the judge was required to make findings of fact and conclusions of law and where he did so pursuant to a stipulation of the parties, the judge could find from the evidence that justice was better served by denial of the motion to dismiss that he had previously granted orally and could enter the *nunc pro tunc* order. The parties having participated fully in the subsequent proceedings without objection, we determine that the proceedings which followed the rendering of the 12 February 1986 ruling were within the jurisdiction of the trial judge.

[2] We must now determine whether the evidence supports the trial judge's findings that defendant McNiel was the buyer of the building materials. If we find that it does, we must then determine whether the findings support the conclusion that defendant McNiel had a right of indemnification from third-party defendants Foley and Mortons in that McNiel acted as an agent and in accommodation to the third-party defendants. We find that the evidence supports the findings and the findings in turn support the conclusions and affirm the decision of the trial court.

"[A]ppellate courts are bound by the trial courts' findings of fact where there is some evidence to support those findings, even though the evidence might sustain findings to the contrary. *Williams v. Pilot Life Ins. Co.*, 288 N.C. 338, 218 S.E. 2d 368 (1975); *see also*: 1 Strong N.C. Index 2d, Appeal and Error, § 57.3." *In re Montgomery*, 311 N.C. at 110-11, 316 S.E.2d at 252-53. The evidence supporting a judgment against defendant McNiel was plenary. McNiel signed the purchase order at issue in this case as "buyer." All accounts, contracts, purchase order supplements, invoices, statements, bills of lading, and other documents were in the name of defendant McNiel individually. Plaintiff Kirby delivered the goods, and defendant McNiel himself acknowledged at trial that he could see how Kirby could have looked to his credit. We find that there was sufficient evidence to conclude that McNiel was liable to Kirby.

McNiel urges us to conclude that certain change orders apparently telephoned to Kirby by third-party defendant Foley constituted a novation of the contract by law. Novation requires the agreement of the parties that a new contract take the place of an existing obligation. 58 Am. Jur. 2d *Novation* § 15, at 621 (1989); *see also* 3 Strong's N.C. Index 3d *Contracts* § 19 (1976). The intention of the parties to effectuate a novation must be clear and definite, for novation is never to be presumed. *Wilson v. McClenny*, 262 N.C. 121, 130, 136 S.E.2d 569, 576 (1964). Kirby believed that Foley was an employee of McNiel and that Foley had the authority from McNiel to make changes. There was no intent on the part of Kirby to substitute a new debtor with the intent to release the prior one. *Electric Co. v. Housing, Inc.*, 23 N.C. App. 510, 209 S.E.2d 297 (1974), *cert. denied*, 286 N.C. 413, 211 S.E.2d 795 (1975).

[3] The evidence, the findings, and the conclusions also support the judgment against third-party defendants Mortons and Foley. The evidence reveals that James O. Morton, Jr., and Rebecca P. Morton were not only husband and wife, but were partners doing business as Carteret Lanes. Both parties signed the construction financing loan, the lease for the land on which the building was to be constructed, and the contract with Foley. McNiel and Foley stated that they were acting as agents for the Mortons. Although James Morton denied that an agency relationship existed between himself and McNiel and Foley, the trial court resolved this contradiction of fact against the Mortons. We thus conclude that there was adequate evidence to support the judge's finding that McNiel was in fact acting as an agent for the Mortons.

In conclusion, we hold that on the peculiar facts of this case, the trial court had jurisdiction to enter its *nunc pro tunc* orders of 14 April 1986. We conclude further that the judgments of the trial court in favor of Kirby against McNiel and in favor of McNiel against the Mortons and Foley are supported by the conclusions of law, which are supported by the findings of fact, and that the findings of fact are supported by the evidence offered at trial. The 14 April 1986 judgments of the trial court are affirmed.

Affirmed.