ADA MORGAN, RAY MORGAN, JUDITH SCULL a/k/a JUDITH THOMPSON SCULL, DAVID SCULL, ROGER PARKER a/k/a BILLY ROGER PARKER, JR., AND THE CITY OF WILSON, a NORTH CAROLINA MUNICIPAL CORPORATION, PLAINTIFFS

v.

NASH COUNTY

No. COA11-1544-2

Filed 4 December 2012

**1. Zoning—standing—injury not redressed by decision—injury conjectural—city not directly affected—property too remote**

The trial court did not err in a rezoning case by concluding that plaintiff City did not have standing to challenge defendant County's rezoning of the subject property. The City could not establish that it was likely the alleged injury would have been redressed by a favorable decision. Further, the alleged injury was conjectural or hypothetical, the contested zoning amendment did not "directly" affect the City, and the City's property was located three and a half miles from the rezoned property and thus was too remote to support the City's claim of standing.

MORGAN v. NASH CNTY.

[224 N.C. App. 60 (2012)]

**2. Zoning—statement of reasonableness—contemporaneous with adoption of amendment—sufficient**

The trial court did not err in a rezoning case by granting summary judgment in favor of defendant County on plaintiffs' claim that the Board of Commissioners failed to comply with the requirements of N.C.G.S. § 153A-341. The Board's adoption of a statement of reasonableness contemporaneously with the adoption of the zoning amendment was sufficient to comply with the statute.

**3. Zoning—contract zoning—no reciprocal agreement**

The trial court did not err in a rezoning case by granting summary judgment in favor of defendant County because the Board of Commissioners did not engage in illegal contract zoning when it approved the rezoning of the subject property. There was no evidence that the Board obligated itself to, or entered into a reciprocal agreement with, the landowners or Sanderson Farms in exchange for approval of the rezoning application.

**4. Zoning—duty to consider permissible uses of property fulfilled**

The trial court did not err in a rezoning case by granting summary judgment in favor of defendants because the evidence established that the Board of Commissioners fulfilled its duty to consider all permissible uses of the property proposed to be rezoned.

**5. Zoning—Rule 60(b) motion—no new evidence—attorney fees—no jurisdiction**

The trial court did not abuse its discretion in a rezoning case by reaching its conclusion that it would deny plaintiffs' Rule 60(b) motion had it been before the court because plaintiffs offered no new information to support their motion. However, the trial court erred in awarding attorney fees and expenses to defendant County in responding to plaintiffs' motion because the trial court did not have jurisdiction to do so.

Appeal by plaintiffs from order entered 30 June 2011 by Judge W. Russell Duke, Jr., in Nash County Superior Court. Heard in the Court of Appeals 9 May 2012.

MORGAN v. NASH CNTY.

[224 N.C. App. 60 (2012)]

*Brough Law Firm, by Robert E. Hornik, Jr., for plaintiffs-appellants.*

*Smith Moore Leatherwood LLP, by Thomas E. Terrell, Jr. and Elizabeth Brooks Scherer, and Battle, Winslow, Scott & Wiley, P.A., by G. Vincent Durham, Jr., for defendant-appellee.*

HUNTER, Robert C., Judge.

Plaintiffs[1] appeal from the trial court's order dismissing the City of Wilson's ("the City") claims for a lack of standing and granting summary judgment in favor of defendant Nash County ("the County") as to all remaining plaintiffs and their claims. After careful review, we affirm the trial court's 30 June 2011 order.

Additionally, pursuant to a petition for writ of certiorari, plaintiffs ask this Court to review the advisory opinion entered by the trial court in response to plaintiffs' Rule 60(b) motion filed during the pendency of this appeal and to review the trial court's order awarding Nash County attorneys' fees and expenses incurred in responding to the Rule 60(b) motion. Upon granting certiorari, we find no abuse of discretion in the trial court's advisory opinion, but we vacate the order awarding attorneys' fees and expenses to Nash County.

**Background**

In May 2010, the North Carolina Department of Commerce contacted Nash County officials to inform them that a Mississippi corporation, Sanderson Farms, Inc. ("Sanderson Farms"), was interested in constructing a large, poultry processing facility in North Carolina. The County began to recruit Sanderson Farms to locate the processing facility in Nash County and identified a 147-acre tract of land ("the subject property") that the County believed was suitable for its use. The subject property was then owned by Cecil and Bertine Williams, who are not parties to the underlying action.

Nash County is a member of a North Carolina not-for-profit corporation, Carolinas Gateway Partnership ("CGP"), whose mission is to promote economic development in Nash and Edgecombe Counties. In August 2010, CGP created a limited liability corporation, Coastal Plain Land Company, LLC ("Coastal"), for the purpose of facilitating the recruitment of Sanderson Farms to Nash County. To

---

1. "Plaintiffs" collectively refers to Ada Morgan, Ray Morgan, Judith Scull a/k/a Judith Thompson Scull, David Scull, Roger Parker a/k/a Billy Roger Parker, Jr., and the City of Wilson, a North Carolina municipal corporation.

MORGAN v. NASH CNTY.

. [224 N.C. App. 60 (2012)]

that end, in September 2010, Coastal acquired an option to purchase the subject property from the Williams family. The subject property was zoned for "Rural Commercial" and "Residential" uses, which would not allow for the type of economic development Sanderson Farms or similar businesses could bring· to Nash County. Consequently, Coastal submitted a rezoning application for the subject property to the Nash County Board of County Commissioners requesting that the property be rezoned to "General Industrial," which would permit a variety of industrial uses.

In order for the subject property to be a viable site for the poultry processing facility, not only would the land have to be rezoned, but Sanderson Farms would require additional land on which to locate a hatchery and land to use for sprayfields—fields on which Sanderson Farms could disperse the processing facility's treated wastewater. Nash County officials and CGP located separate tracts of land in Nash County suitable for these additional needs: a tract of land located approximately two miles to the east of the subject property as a potential site for the hatchery; and a 650-plus acre tract of land located several miles to the west of the subject property that could be used as sprayfields. In order to utilize the sprayfields, a six-mile long, sanitary sewer pipe would have to be constructed to transport the processing facility's treated wastewater to the fields.

## A. First Rezoning

On 1 November 2010, the Nash County Board of County Commissioners ("the Board") voted to rezone the subject property to a General Industrial zoning district.[2] On 19 November 2010, the City of Wilson joined thirty-three individual plaintiffs and filed a lawsuit in Nash County Superior Court challenging the rezoning. In that suit the plaintiffs alleged: (1) that the Board failed to comply with statutory and administrative procedural requirements when rezoning the subject property; and (2) that the rezoning constituted an illegal "contract zoning." On 1 July 2011, Judge W. Russell Duke, Jr. entered an order granting the County's Rule 12(b)(1) motion to dismiss the City and all its claims, with prejudice, concluding that the City failed to establish that it had standing to maintain its challenge to the rezoning of the subject property. The City appealed, and that appeal is the sub-

---

2. The tracts of land identified for the hatchery and sprayfields were not rezoned with the subject property; Sanderson Farms's proposed uses of those tracts were permitted uses under the sites' existing zoning designations. The zoning of the proposed hatchery and sprayfield sites was not challenged in the underlying action.

ject of *Albright v. Nash County*, ___ N.C. App. ___, 731 S.E.2d 276 (2012) (unpublished).[3]

## B. Second Rezoning

Coastal's option to purchase the subject property from the Williams family was set to expire in December 2010 by which time Sanderson Farms had not committed to locating its proposed facilities in Nash County. Realizing that the subject property was an ideal location for economic development by Sanderson Farms or other businesses, Nash County purchased 142 acres of the subject property on 23 December 2010; the Williams family retained ownership of the remaining five acres. In January 2011, Sanderson Farms announced that it was postponing its decision, for at least one year, as to whether it would build a poultry processing facility in North Carolina.

On 23 February 2011, the Williams family and Nash County filed a joint application to rezone the subject property. On 4 April 2011, the Board voted to approve the application, rezoning the subject property to a General Industrial district. On 26 April 2011, the City joined several property owners in filing the underlying action challenging the validity of the second rezoning of the subject property. In their complaint, plaintiffs alleged that the Board failed to comply with N.C. Gen. Stat. § 153A-341 by failing to adopt a statement of reasonableness prior to approving the second rezoning application and that the rezoning of the subject property constituted an illegal "contract zoning."

In response, Nash County filed a motion pursuant to N.C. Gen. Stat. § 1A-1, Rule 56 seeking summary judgment with respect to plaintiffs' claims. The County also filed a motion pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(1) seeking dismissal of all plaintiffs and their claims for lack of standing, except for plaintiff Billy Roger Parker, Jr. Following a hearing on the County's motions, the trial court entered an order on 30 June 2011 in which the court: dismissed the City and all its claims, with prejudice, for lack of standing; denied the County's motion to dismiss the remaining plaintiffs concluding they had standing to challenge the rezoning of the subject property; and granted, *inter alia*, the County's motion for summary judgment on all claims by all plaintiffs. Plaintiffs timely entered notice of appeal.

---

3. We note that *Albright* cites the original decision issued in this case (*Morgan v. Nash County*, ___ N.C. App. ___, ___ S.E.2d ___, (No. COA11-1544) (Aug. 21, 2012)), which was withdrawn for the hearing of additional issues. This decision, No. COA11-1544-2, replaces that original decision, No. COA11-1544.

MORGAN v. NASH CNTY.

[224 N.C. App. 60 (2012)]

## Discussion

### A. Standing

[1] First, the City contends the trial court erred as a matter of law in concluding that it did not have standing to challenge the County's rezoning of the subject property. We disagree.

We review *de novo* the trial court's order granting a motion to dismiss for lack of standing. *Neuse River Found., Inc. v. Smithfield Foods, Inc.*, 155 N.C. App. 110, 114, 574 S.E.2d 48, 51 (2002), *disc. review denied*, 356 N.C. 675, 577 S.E.2d 628 (2003). " 'Standing is a necessary prerequisite to a court's proper exercise of subject matter jurisdiction.' " *Id.* at 113, 574 S.E.2d at 51 (quoting *Aubin v. Susi*, 149 N.C. App. 320, 324, 560 S.E.2d 875, 878 (2002)). The party invoking the trial court's jurisdiction bears the burden of establishing that it has standing to maintain its action. *Id.* The three elements of standing are:

(1) "injury in fact"——an invasion of a legally protected interest that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Id.* at 114, 574 S.E.2d at 52 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 119 L. Ed. 2d 351, 364 (1992)).

The City maintains that as a result of the rezoning Sanderson Farms will build a poultry processing plant on the subject property and will disperse treated wastewater from the processing plant onto the proposed sprayfields which are located in the Toisnot Watershed. The City alleges that because it draws approximately half of its water supply from the Toisnot Watershed, the dispersal of treated agricultural wastewater by Sanderson Farms on the proposed sprayfields would threaten the City's water treatment facilities and the quality of its water supply. Therefore, the City contends that it has legal standing to maintain the underlying action.

We acknowledge that the City has provided uncontested evidence that Sanderson Farms is interested in building its poultry processing facility on the subject property. Despite the evidence of Sanderson Farms's interest in the rezoned property, however, we conclude the City cannot establish standing to challenge Nash County's rezoning of the subject property when the land use the City seeks to prevent was

not made possible by the zoning amendment it seeks to reverse. The subject property and the sprayfields are separate and distinct tracts of land located several miles apart. The sprayfields were not rezoned by Nash County, and plaintiffs do not challenge the zoning of that land.

In fact, the City does not dispute that before the second rezoning of the subject property was approved, the disposal of agricultural wastewater was a permitted use on that land. Thus, while the City contends that Sanderson Farms's processing facility could not exist on the subject property without the sprayfields, that fact, if true, is not determinative. Rather, the critical fact is that the sprayfields—whether they belong to Sanderson Farms or any other business—could exist without the processing facility. In short, the City cannot establish that it is likely the alleged "injury will be 'redressed by a favorable decision[,]' " *Lujan*, 504 U.S. at 561, 119 L. Ed. 2d at 364 (citation omitted), since the disposal of treated wastewater would still be permitted on the proposed sprayfields despite a reversal of the second rezoning of the subject property.

Additionally, under *Lujan*, for the City to establish that it has standing, it must demonstrate the alleged injury is "actual or imminent, not conjectural or hypothetical[.]" *Id.* at 560, 119 L. Ed. 2d at 364 (citation and quotation marks omitted). The City contends the damage to its water supply will result from "millions of gallons of nutrient-bearing wastewater" being sprayed on land within the Toisnot Watershed and that the County has offered no evidence to the contrary. However, the County has provided evidence that the wastewater would be treated at a disinfection station before being dispersed and that the treatment system would have to meet the requirements of the North Carolina Administrative Code. 15A N.C.A.C. 2T.0504 (2012). Additionally, the wastewater irrigation system would have to comply with the permitting requirements imposed by the North Carolina Administrative Code. *Id.* In fact, the Wilson city manager, Grant Goings, conceded that any wastewater entering into the watershed would have to meet state and federal effluent standards. Therefore, for the City to establish actual or imminent injury, we must assume that the wastewater would not be properly treated and that the sprayfields would not be properly monitored, in contravention of state and federal regulations. Should such events occur, a separate action for violations of environmental regulations may provide the City with the proper remedy. Accordingly, we conclude the alleged injury is "conjectural or hypothetical" and insufficient to establish standing under the Supreme Court's holding in *Lujan*, 504 U.S. at 560-61, 119 L. Ed. 2d at 364 (citation and quotation marks omitted).

**MORGAN v. NASH CNTY.**

[224 N.C. App. 60 (2012)]

The City counters that the standard set forth in *Lujan* is not the proper standard by which to analyze standing for the purpose of the review of a legislative rezoning decision. Rather, the City contends the proper standard is set forth in *Taylor v. City of Raleigh*, 290 N.C. 608, 227 S.E.2d 576 (1976). However, applying the rationale of *Taylor*, we conclude the City still fails to establish standing.

In *Taylor*, the plaintiff-landowners challenged the rezoning of a tract of land by the City of Raleigh that allowed for the construction of multiple apartment houses on the property. *Id.* at 616, 227 S.E.2d at 581. In order to complete the construction, the City of Raleigh brought condemnation proceedings against the plaintiffs seeking easements across the plaintiffs' property through which water and sewer lines would connect to the apartment development. *Id.*

Despite the fact that the City of Raleigh sought to condemn portions of the plaintiffs' property, our Supreme Court held the plaintiffs failed to establish standing where: (1) the nearest plaintiff lived one-half mile from the rezoned property and (2) multi-family dwellings were already permitted on the rezoned land before the City of Raleigh amended the zoning ordinance—the amended ordinance merely increased the type and number of units permitted. *Id.* at 620-21, 227 S.E.2d at 583-84 ("Plaintiffs' standing to attack the rezoning ordinance must be considered and determined with reference to whether *the rezoning ordinance itself directly* and adversely affects them." (emphasis added)). Similarly, here, the zoning ordinance that the City seeks to challenge did not enable the land use that the City alleges will result in harm to its water system. Instead, the treated wastewater, if dispersed, would be dispersed on a tract of land separate and distinct from the rezoned property and could be dispersed in the Toisnot Watershed irrespective of the zoning designation of the subject property. Thus, the contested zoning amendment does not "directly" affect the City as required by *Taylor*, and the City's argument is overruled.

The City further contends that our caselaw has not required ownership of either the rezoned property or of property adjoining the rezoned property to establish standing to challenge a zoning amendment. However, it is apparent that a plaintiff's proximity to the rezoned property is a factor our Courts have considered. The *Taylor* Court considered the fact that the plaintiff's property that was nearest to the rezoned property was located one-half mile from the rezoned property and was separated from it by a buffer of 45 acres. *Id.* Here, the City's property is located three and a half miles from the

rezoned property and thus is too remote to support the City's claim of standing to challenge the zoning amendment. *See also Blades v. City of Raleigh*, 280 N.C. 531, 544, 187 S.E.2d 35, 42 (1972) (standing found where the plaintiffs were "owners of property in the adjoining area affected by the ordinance"); *Zopfi v. City of Wilmington*, 273 N.C. 430, 431, 160 S.E.2d 325, 328 (1968) (standing found where the plaintiffs owned property in a subdivision "adjoining or in close proximity" to the rezoned property). The City's argument is overruled.

## B. Requirements of N.C. Gen. Stat. § 153A-341

[2] Plaintiffs argue that the trial court erred in granting summary judgment in favor of Nash County on plaintiffs' claim that the Board of Commissioners failed to comply with the requirements of N.C. Gen. Stat. § 153A-341 when adopting the zoning amendment. We disagree.

Section 153A-341 of our General Statutes provides, in part, that "[p]rior to adopting or rejecting any zoning amendment, the governing board shall adopt a statement describing whether its action is consistent with an adopted comprehensive plan and explaining why the board considers the action taken to be reasonable and in the public interest." N.C. Gen. Stat. § 153A-341 (2011).

The minutes of the 4 April 2011 meeting of the Board establish that Commissioner Robbie B. Davis made a motion that contained two recommendations: (1) that the Board adopt a statement which explained why the proposed zoning amendment was reasonable, was in the public interest, and was consistent with the 2006 Nash County Land Development Plan (hereinafter "the statement of reasonableness" or "the statement"); and (2) that the Board approve the proposed zoning amendment. The motion was approved by a vote of five to two. The text of the statement of reasonableness was included in the written zoning amendment adopted by the Board.

Plaintiffs acknowledge the statement of reasonableness was verbally made and approved at the Board's meeting and that the text of the statement was included in the written zoning amendment. Plaintiffs do not argue that the statement is substantively deficient. Rather, plaintiffs argue that Nash County failed to comply with what they allege to be a procedural requirement of N.C. Gen. Stat. § 153A-341—that the statement be adopted *before* the adoption of a zoning amendment. We are not persuaded by plaintiffs' interpretation of the statute.

**MORGAN v. NASH CNTY.**

[224 N.C. App. 60 (2012)]

"Pursuant to fundamental principles of statutory construction, we must first seek to discern the intent of the legislature, and in seeking to ascertain the legislative intent, the statutory language should be construed in context." *James River Equip., Inc. v. Tharpe's Excavating, Inc.*, 179 N.C. App. 336, 342, 634 S.E.2d 548, 553, *appeal dismissed and disc. review denied*, 361 N.C. 167, 639 S.E.2d 650 (2006). Interpretations that lead to "anomalous or illogical" results do not reflect the likely intent of the legislature. *Id.* (citation and quotation marks omitted).

Here, while N.C. Gen. Stat. § 153A-341 provides that a statement of reasonableness is to be adopted by the governing board "[p]rior to" its adoption or rejection of a zoning amendment, the same sentence provides that the statement must explain why the "action *taken*" by the governing board (i.e., the adoption or rejection of the zoning amendment) is reasonable and in the public interest. (Emphasis added.) Under plaintiffs' interpretation, the governing board would be required to adopt the statement explaining its decision to approve or reject the proposed zoning amendment before it has made its decision. We cannot adopt such an illogical interpretation of the statute. *James River Equip.*, 179 N.C. App. at 342, 634 S.E.2d at 553. To effectuate legislative intent the "words and phrases of a statute may not be interpreted out of context, but must be interpreted as a composite whole so as to harmonize with other statutory provisions[.]" *Duke Power Co. v. City of High Point*, 69 N.C. App. 378, 387, 317 S.E.2d 701, 706, *disc. review denied*, 312 N.C. 82, 321 S.E.2d 895 (1984). Thus, we conclude it is sufficient—if not necessary—for a governing board to adopt the statement that is required by N.C. Gen. Stat. § 153A-341 contemporaneously with the adoption or rejection of the zoning amendment.

Plaintiffs cite *Wally v. City of Kannapolis*, ___ N.C. ___, ___, 722 S.E.2d 481, 484 (2012), in which the Supreme Court of North Carolina held a zoning amendment to be void where the city council failed to approve a statement of reasonableness when adopting the amendment. The statute at issue in *Wally*, N.C. Gen. Stat. § 160A-383, is substantially similar to N.C. Gen. Stat. § 153A-341, but section 160A-383 applies to zoning amendments adopted by cities and towns rather than by counties. The relevant portion of section 160A-383 provides that

> [w]hen adopting or rejecting any zoning amendment, the governing board *shall also approve a statement* describing whether its action is consistent with an

adopted comprehensive plan and any other officially adopted plan that is applicable, and briefly explaining why the board considers the *action taken* to be reasonable and in the public interest.

N.C. Gen. Stat. § 160A-383 (2011) (emphasis added); *Wally*, ___ N.C. at ___, 722 S.E.2d at 483.

The *Wally* Court concluded that the plain language of section 160A-383 required the city council to "first, adopt or reject the zoning amendment, and second, approve a proper statement." ___ N.C. at ___, 722 S.E.2d at 483. A staff report provided to the city council included the staff's conclusion that the proposed zoning amendment was " 'consistent with the long range goals of the City, and reasonable in light of existing and approved infrastructure.' " *Id.* at ___, 722 S.E.2d at 482. Yet, when the city council adopted the zoning amendment it failed to approve a statement of reasonableness. *Id.* at ___, 722 S.E.2d at 483. The Court provided several grounds for its conclusion.

First, the Court noted the city council's failure to adopt the statement was conclusively established by the trial court's uncontested finding of fact that there was no written statement of reasonableness. *Id.* Second, the Court rejected the argument that the city council impliedly approved the staff report "by virtue of having the report in hand" when it adopted the zoning amendment because, the Court concluded, the language of the statute did not authorize an implied approval. *Id.* Furthermore, the staff report merely stated that "the *staff*" considered the action taken to be reasonable, rather than explaining why " 'the board' " considered the action to be reasonable, as required by the statute. *Id.* at ___, 722 S.E.2d at 483-84 (quoting N.C. Gen. Stat. § 160A-383). Lastly, the Court rejected the argument that the city council satisfied section 160A-383 by the adoption of a statement which announced that the city council's final vote on the zoning amendment was "within the guidelines of its zoning authority"; the statement provided no *description* of whether the zoning amendment was consistent with any controlling land use plan and no *explanation* of why its actions were reasonable and in the public interest. *Id.* at ___, 722 S.E.2d at 484.

The facts presented here are distinguishable. While *Wally* involved an uncontested finding of fact that there was no written statement of reasonableness adopted by the zoning authority, here, we have no findings of fact on this point. Indeed, plaintiffs do not argue that the Board failed to adopt a statement but that it did so in the wrong

sequence; an argument we have rejected above. Second, the statement adopted did not merely reflect the reasoning of county staff but reflected the reasoning of the Board as to why the zoning amendment was consistent with the controlling land use plan, reasonable, and in the public interest. The statement adopted by the Board thus contained the statutorily required "description" and "explanation" that was absent in *Wally*. We conclude the Board's adoption of the zoning amendment was proper under N.C. Gen. Stat. § 153A-341, and plaintiffs' arguments are overruled.

## C. Illegal Contract Zoning

[3] Plaintiffs next argue that the trial court erred in granting summary judgment in favor of Nash County because, plaintiffs allege, the Board of Commissioners engaged in an illegal contract zoning when it approved the rezoning of the subject property. We disagree.

"Illegal contract zoning properly connotes a transaction wherein both the landowner who is seeking a certain zoning action and the zoning authority itself undertake reciprocal obligations in the context of a *bilateral* contract." *Chrismon v. Guilford County*, 322 N.C. 611, 635, 370 S.E.2d 579, 593 (1988). Determining that the zoning authority's actions constituted an illegal contract zoning "depends upon a finding of a transaction in which both the landowner seeking a rezoning and the zoning authority undertake reciprocal obligations." *Hall v. City of Durham*, 323 N.C. 293, 298-99, 372 S.E.2d 564, 568 (1988). "In short, a 'meeting of the minds' must occur; mutual assurances must be exchanged." *Id.* In *Hall*, our Supreme Court rejected the argument that the city council engaged in an illegal contract zoning noting that while the record established the prospective developer "*did* make representations or offer assurances" to the city council, the record was devoid of any evidence that the city council "undertook to obligate itself" in return. *Id.* at 299, 372 S.E.2d at 568. Similarly, in *Chrismon*, 322 N.C. at 639, 370 S.E.2d at 595-96, our Supreme Court concluded that the approval of a rezoning application did not constitute an illegal contract zoning where the applicant made a unilateral promise to the board of commissioners concerning his proposed land use but the board did not reciprocate, and it made its decision only after a thorough consideration of the merits of the application. *See also Kerik v. Davidson County*, 145 N.C. App. 222, 232, 551 S.E.2d 186, 193 (2001) (concluding the board of commissioners approval of a rezoning application was not an illegal contract zoning despite the rezoning applicant's promises to the board of commissioners where the board did not obligate itself to the applicant).

Here, plaintiffs contend that the Board approved the rezoning application with the expectation and understanding that Sanderson Farms would use the subject property for its processing facility. Nash County concedes that it was engaged in recruiting Sanderson Farms to build a poultry processing facility within the county and that the subject property was a possible location. Sanderson Farms did not own the subject property and was not the applicant seeking the rezoning; Nash County and the Williams family were the landowners and applicants. Moreover, as the County attorney reminded the Board in the public meeting held prior to the approval of the application, Sanderson Farms did not have an option to buy the subject property, and Nash County had no obligation to sell the subject property to the company. During the Board's discussion of the rezoning application, several Board members asserted that a vote to approve the rezoning was not a vote for Sanderson Farms's intended use of the land, that the property was still owned by Nash County, and that it would be marketed to any industries that could appropriately use the site. Indeed, one of the two Board members who voted against the approval of the rezoning stated that he was troubled by the fact that if the zoning amendment was adopted the subject property could be used for purposes other than poultry processing, such as mining, the disposal of radioactive waste, or as a landfill. That the Board approved the rezoning application with the knowledge of Sanderson Farms's interest in the subject property is not sufficient to establish that the Board engaged in illegal contract zoning. There is no evidence that the Board obligated itself to, or entered into a reciprocal agreement with, the landowners or Sanderson Farms in exchange for approval of the rezoning application, and the Board's actions did not constitute illegal contract zoning.

We conclude *Allred v. City of Raleigh*, 277 N.C. 530, 178 S.E.2d 432 (1971), is distinguishable. There, the Court held an ordinance to be invalid where the record established that the zoning authority did not base its approval of the rezoning application on all uses permissible in the zoning district sought but, rather, on the "the specific plans of the applicant." *Id.* at 544-45, 178 S.E.2d at 440. The zoning authority in *Allred* "accepted the assurances of the applicant" regarding his development plan for the property when it approved his rezoning application. *Id.* at 545, 178 S.E.2d at 440. As we concluded above, here, there is no evidence of a reciprocal agreement between the Board and the landowners or Sanderson Farms. As we conclude below, the record establishes that the Board did consider all permis-

sible uses of the subject property in reaching its decision on the rezoning application, which further distinguishes *Allred* from this case.

## D. Consideration of All Permissible Land Uses

**[4]** Plaintiffs also argue that the trial court erred by granting summary judgment because the Board failed to consider all permitted uses of the property subject to the rezoning application. We disagree.

> "[W]hen rezoning property from one general use district with fixed permitted uses to another general use district with fixed permitted uses, a [Board of Commissioners] must determine that the property is suitable for all uses permitted in the new general use district . . . ." Consequently, all permissible uses of property proposed to be rezoned into a new classification must be considered for the rezoning to be valid.

*Kerik*, 145 N.C. App. at 233, 551 S.E.2d at 193 (quoting *Hall*, 323 N.C. at 305, 372 S.E.2d at 572). In *Kerik*, this Court concluded that where the board of commissioners received a detailed list of all the permitted uses in the relevant zoning districts and the minutes of the board's meeting revealed that the board members considered many permissible uses of the property to be rezoned, that the board complied with its duty. *Id.* at 234, 551 S.E.2d at 193.

Similarly, here, the record demonstrates that the Board considered all of the permissible uses of the subject property: each Board member was provided with a list of all permitted uses for the General Industrial district; the minutes of the Board's meeting reveal that the county planning director read aloud all permitted uses before the zoning amendment was adopted; the staff report to the Board also included a complete list of the permitted uses; and each Board member signed an affidavit averring that he or she considered all uses allowed in the zoning district being considered before casting his or her vote. As in *Kerik*, we conclude this evidence establishes that the Board fulfilled its duty to consider all permissible uses of the property proposed to be rezoned. Plaintiffs' argument is overruled.

## E. Plaintiffs' Petition for Writ of Certiorari

**[5]** During the pendency of this appeal, plaintiffs filed a Rule 60(b) motion with the trial court seeking relief from the trial court's order granting the County's motion to dismiss the City and its claims. The trial court entered an advisory opinion stating that it would deny

plaintiffs' motion had plaintiffs not appealed the order, and it entered an order awarding Nash County attorneys' fees and expenses incurred in its response to plaintiffs' motion. Plaintiffs ask this Court to review the trial court's advisory opinion and order by a petition for writ of certiorari. We grant the writ of certiorari and, after careful review, discern no abuse of discretion in the advisory opinion, but we vacate the trial court's order awarding attorneys' fees and expenses to Nash County.

## 1. Advisory Opinion

The basis for plaintiffs' Rule 60(b) motion was plaintiffs' allegation of the discovery of new evidence in support of their claims against Nash County. The evidence was discovered after the filing of this appeal and consists of a survey plat ("the plat") for a tract of land on which plaintiffs allege Sanderson Farms intends to build a hatchery. The plat identified the land as the "Sanderson Farms Rocky Mount Hatchery Site." The plat was based on a survey performed in November 2010 and was recorded in the Nash County Registry in December 2011. Plaintiffs allege the proposed hatchery would service the processing facility that Sanderson Farms intends to build on the subject property. The land for this proposed hatchery and the subject property are separate and distinct tracts of land located approximately two miles apart.

In support of their Rule 60(b) motion, plaintiffs argued: (1) that the plat is relevant to whether the City of Wilson has standing to challenge the rezoning of the subject property; and (2) that the plat is relevant to their allegation that the rezoning of the subject property was an illegal contract zoning because the plat demonstrates "the commitment of financial resources by Sanderson Farms to a key component" of the plans to build a poultry processing plant on the subject property.

In an advisory opinion entered 30 April 2012, the trial court concluded that it would have denied plaintiffs' motion had the court retained jurisdiction over the matter. See Bell v. Martin, 43 N.C. App. 134, 142, 258 S.E.2d 403, 409 (1979) (describing the procedure whereby a trial court may "consider a Rule 60(b) motion filed while the appeal is pending for the limited purpose of indicating, by a proper entry in the record, how it would be inclined to rule on the motion were the appeal not pending"), rev'd on other grounds, 299 N.C. 715, 264 S.E.2d 101 (1980). The trial court noted that the plat did not describe the subject property, which was rezoned by Nash County. Rather, it described a separate tract of land located approxi-

mately one mile from the subject property. Additionally, the trial court noted that plaintiffs had already established that Sanderson Farms was working with CGP in considering locating a hatchery on the property described in the plat and had produced numerous maps depicting the site. Consequently, the trial court concluded the plat was not new evidence but was merely cumulative and corroborative of evidence already before the court and cited *Waldrop v. Young*, 104 N.C. App. 294, 296, 408 S.E.2d 883, 884 (1991) ("Proffered evidence which is merely cumulative or corroborative is not 'newly discovered evidence' within the meaning of Rule 60(b)(2).").

We discern no new information in plaintiffs' proffered evidence, and, thus, no abuse of discretion by the trial court in reaching its conclusion that it would deny plaintiffs' Rule 60(b) motion had it been before the court. *See Kingston v. Lyon Constr., Inc.*, 207 N.C. App. 703, 709, 701 S.E.2d 348, 353 (2010) ("Denial of a Rule 60(b) motion is reviewed under an abuse of discretion standard."). Plaintiffs' argument is overruled. We remand for the trial court to enter an order on the Rule 60(b) motion consistent with its advisory opinion with respect to that issue. *See In re Baby Boy Scearce*, 81 N.C. App. 662, 665, 345 S.E.2d 411, 413-14 (concluding that where the trial court entered an advisory opinion on a Rule 60 motion during the pendency of the underlying appeal, and where this Court agreed, in part, with the advisory opinion, we would remand the matter to the trial court for entry of an order on the Rule 60 motion consistent with the trial court's advisory opinion with respect to that issue), *disc. review denied*, 318 N.C. 415, 349 S.E.2d 590 (1986).

## 2. Award of Attorneys' Fees and Expenses

In an order entered simultaneously with the advisory opinion concerning plaintiffs' Rule 60(b) motion, the trial court awarded Nash County reasonable attorneys' fees and expenses incurred in responding to plaintiffs' motion. The trial court concluded that, because plaintiffs presented no new evidence to support their Rule 60(b) motion, their motion did not raise a justiciable issue.

The trial court also concluded that Nash County was the "prevailing party" in regard to plaintiffs' motion and, upon motion by Nash County, awarded attorneys' fees and expenses to the County pursuant to N.C. Gen. Stat. § 6-21.5 ("In any civil action . . . the court, upon motion of the prevailing party, may award a reasonable attorney's fee to the prevailing party if the court finds that there was a complete absence of a justiciable issue of either law or fact raised by

the losing party in any pleading."). In their petition for writ of certiorari, plaintiffs contend the trial court erred in awarding attorneys' fees and expenses to the County as it did not have jurisdiction to do so.[4] We agree.

Section 1-294 of our General Statutes, provides that

> [w]hen an appeal is perfected as provided by this Article it stays all further proceedings in the court below upon the judgment appealed from, or upon the matter embraced therein; but the court below may proceed upon any other matter included in the action and not affected by the judgment appealed from.

N.C. Gen. Stat. § 1-294 (2011). Thus, pending appeal, "the trial judge is *functus officio*, subject to two exceptions and one qualification." *Kirby Bldg. Sys., Inc. v. McNiel*, 327 N.C. 234, 240, 393 S.E.2d 827, 831 (1990).

> The exceptions are that notwithstanding the pendency of an appeal the trial judge retains jurisdiction over the cause (1) during the session in which the judgment appealed from was rendered and (2) for the purpose of settling the case on appeal. The qualification to the general rule is that "the trial judge, after notice and on proper showing, may adjudge the appeal has been abandoned" and thereby regain jurisdiction of the cause.

*Id.* (quoting *Bowen v. Motor Co.*, 292 N.C. 633, 635-36, 234 S.E.2d 748, 749 (1977)). These two exceptions and one qualification do not apply in this case.

Once plaintiffs gave notice of appeal from the 30 June 2011 order, the trial court was divested of jurisdiction over all matters included in the action that were "not affected by the judgment appealed from[.]" N.C. Gen. Stat. § 1-294. The subject matter of plaintiffs' Rule 60(b) motion is the same subject matter underlying the appeal from the trial court's 30 June 2011 order: whether the City of Wilson has standing to challenge Nash County's rezoning of the subject property and whether the rezoning constituted an illegal contract zoning. Thus, we conclude the Rule 60(b) motion is necessarily one that is

---

4. Plaintiffs entered notice of appeal from the trial court's award of attorneys' fees and expenses and filed the petition for writ of certiorari "out of an abundance of caution." Nash County did not file a response to the petition.

affected by the outcome of this appeal, and the trial court did not have jurisdiction to enter a final order on the Rule 60(b) motion or make an award of attorneys' fees and expenses related to the motion. *See McClure v. County of Jackson*, 185 N.C. App. 462, 466, 471, 648 S.E.2d 546, 548, 551-52 (2007) (concluding the trial court did not have jurisdiction to award attorneys' fees after notice of appeal had been entered and where the award was based on the outcome of the proceeding from which the appeal was taken). Further, we note the inherent contradiction in the trial court's entry of an order awarding attorneys' fees to the "prevailing party" in an advisory opinion, the purpose of which is merely to indicate "how [the trial court] *would be inclined to rule* on the motion were the appeal not pending." *Bell*, 43 N.C. App. at 142, 258 S.E.2d at 409 (emphasis added). Thus, the trial court's order awarding attorneys' fees and expenses must be vacated.

## Conclusion

We conclude the trial court did not err in dismissing the City of Wilson and its claims against Nash County for a lack of standing. The City cannot establish standing under the standard set forth in *Lujan*, 504 U.S. at 560-61, 119 L. Ed. 2d at 364, or in *Taylor*, 290 N.C. at 621, 227 S.E.2d at 584, as Nash County's rezoning of the subject property did not enable the land use from which the City alleges it will suffer harm. We also conclude that the Nash County Board of Commissioners complied with the requirements of N.C. Gen. Stat. § 153A-341, did not engage in an illegal contract zoning, and did not fail to consider all permissible uses when approving the rezoning of the subject property. Accordingly, the trial court's 30 June 2011 order is affirmed.

Additionally, we find no abuse of discretion in the trial court's advisory opinion, indicating that it would be inclined to deny plaintiffs' Rule 60(b) motion, and we remand for the trial court to enter an order denying the motion. We conclude the trial court was without jurisdiction to enter its order granting Nash County's motion for attorneys' fees and expenses, and the 30 April 2012 order is vacated.

AFFIRMED as to the 30 June 2011 order.

REMANDED as to the 30 April 2012 advisory opinion for entry of an order denying plaintiffs' Rule 60(b) motion.

VACATED as to the 30 April 2012 order awarding attorneys' fees and expenses.

Judges STROUD and ERVIN concur.