IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA21-600-2

Filed 19 February 2025

Richmond County, No. 20 CVS 1127

CHAD GARDNER, LISA GARDNER, LONNIE NORTON, HOPE NORTON, THE TOWN OF DOBBINS HEIGHTS and THE CITY OF HAMLET, Plaintiffs,

v.

RICHMOND COUNTY, Defendant.

Appeal by plaintiff Town of Dobbins Heights from order entered 14 June 2021 by Judge Dawn M. Layton in Superior Court, Richmond County. Heard in the Court of Appeals 5 April 2022 and opinion filed 2 May 2023. Remanded to this Court by order of the North Carolina Supreme Court 18 October 2024.

*The Brough Law Firm, PLLC, by T.C. Morphis, Jr. and Brady N. Herman, for plaintiff-appellant.*

*McGuireWoods LLP, by Henry L. Kitchin, Jr. and Caroline E. Keen, for defendant-appellee.*

STROUD, Judge.

Plaintiff-Appellant Town of Dobbins Heights ("Plaintiff") appeals from the part of the trial court's order granting Defendant-Appellee Richmond County's 12(b)(1) motion to dismiss due to Plaintiff's lack of standing. Because Plaintiff made sufficient allegations to establish standing to bring a declaratory judgment action and did not need to further plead special damages, we reverse the trial court's order as is applied

to Plaintiff.

## I. Background

On 3 December 2020, four individual plaintiffs and two municipal plaintiffs filed a verified complaint in Superior Court, Richmond County "seeking a declaratory judgment that the rezoning" of certain property "by the Richmond County Board of Commissioners on [8 October 2020] is void and of no effect[.]" The municipal plaintiffs included the City of Hamlet and Plaintiff Town of Dobbins Heights.

Plaintiffs allege that in August 2020, the Seaboard Coastline Railroad Company ("CSX") submitted a rezoning application to the Richmond County Board of Commissioners seeking to rezone about 167 acres of property ("the Property") owned by CSX in southeastern Richmond County from "Rural-Residential" and "Agricultural Residential" to "Heavy Industrial." These residential zoning districts were established in about 2003 under a "Zoning Ordinance" adopted by Defendant that "govern[ed] and regulate[d] the use of land in Richmond County located outside municipal corporate limits." The complaint alleged "[t]he Property is [located] approximately one and a half miles from Hamlet's extraterritorial jurisdiction, and approximately two and [a] half miles from both Hamlet's and Dobbins Heights['s] corporate limits." Located "less than 2,500 feet" from the Property is the "Marks Creek Property," a parcel that holds "a body of water that both the Town of Dobbins Heights and the City of Hamlet use as their primary source of drinking water."

CSX sought to rezone the Property to allow an Ohio-based corporation,

International Tie Disposal, LLC, to construct and operate a biochar production facility. This facility, as stated in the "Air Quality Construction Permit Application" submitted by International Tie to the North Carolina Department of Environmental Quality, would "'cook[]' untreated lumber and creosote-treated railroad ties through a pyrolysis process" to produce charcoal. The complaint alleges "creosote is a known carcinogen, and the burning of carcinogens can create harmful toxins and air pollution that are detrimental to the health of humans and animals." The "pyrolysis process" would also allegedly emit air pollutants such as "nitrogen oxide, carbon monoxide, volatile organic compounds (including methanol), . . . particulate matter[,] . . . benzene, methylene chloride, chloroform, tetrachloroethylene ('PCE'), and trichloroethylene ('TCE')."

On 8 September 2020, the Richmond County Planning Board met to consider CSX's rezoning application and "unanimously voted to recommend approval to the County" Board of Commissioners, the entity responsible for granting or denying zoning amendments. On 6 October 2020, the Board of Commissioners met and held a public hearing to consider the rezoning application. At this hearing, Board of Commissioners' staff presented emails and letters submitted by local residents expressing their concerns about the application and proposed biochar facility. These residents expressed concerns about "decreasing property values, financial declines in nearby businesses, increasing air and water pollution, increasing traffic and noise, and . . . significant environmental impacts to wildlife and the surrounding area." The

Nortons, individual plaintiffs in this action, expressed concerns about the quality of community drinking water because of the close proximity of the proposed site to the Marks Creek Property.

The Board of Commissioners reconvened on 8 October 2020 to vote on CSX's rezoning application. Board of Commissioners' staff presented additional emails and letters submitted within 24 hours after the close of the 6 October 2020 public hearing. After hearing and considering the final rounds of public comments, the Board of Commissioners voted to approve CSX's rezoning application; the Property was rezoned to Heavy Industrial.

The municipal plaintiffs alleged they have standing to challenge the rezoning "because International Tie's proposed biochar production facility plant will have a significant negative impact" on the water supply and "general quality of life for the residents[.]" Specifically, they contend: they have "a specific personal and legal interest in the subject matter affected by the Rezoning and are directly and adversely affected thereby"; International Tie's use of the Property would be "an invasion of a legally protected interest that is concrete, particularized, actual and imminent"; and that an infringement on this interest would be "fairly traceable to the Rezoning, and it is likely as opposed to merely speculative that these injuries will be redressed by a decision in this case that is favorable to the Municipal Plaintiffs."

Plaintiffs first claim Defendant failed to comply with the statutory requirements for consistency statements under North Carolina General Statute

Section 153A-341(b) (repealed and recodified in North Carolina General Statute Section 160D-605 (2023)).[1] Second, Plaintiffs claim Defendant failed to consider all permissible uses allowed in the Heavy Industrial zoning district, and thus "the [r]ezoning is void and of no effect under the doctrine established in *Allred v. City of Raleigh*, 277 N.C. 530, 178 S.E.2d 432 (1971)[,] and more recently articulated in *Hall v. City of Durham*, 323 N.C. 293, 372 S.E.2d 564 (1988)." Plaintiffs requested the trial court to declare the zoning amendment "void and of no effect," among other relief.

On 5 February 2021, Defendant served upon Plaintiffs a motion to dismiss under Rules of Civil Procedure 12(b)(1) and 12(b)(6), contending a lack of standing and that Plaintiffs failed to assert any claims upon which relief could be granted. Defendant's motion asserted the municipal plaintiffs lacked standing to bring a declaratory judgment action because a declaratory judgment action could only be challenged "by a person who has a specific personal and legal interest in the subject

---

[1] Chapters 153A and 160A of the General Statutes were repealed, rewritten, and reenacted in Chapter 160D by North Carolina Session Laws 2019-111 and 2020-25 (amending Session Law 2019-111) in June 2020. *See* 2019 N.C. Sess. Law 111, § 2.2; 2020 N.C. Sess. Law 25. North Carolina General Statute Section 160D-605, governing statements of consistency, became effective 19 June 2020, shortly before the complaint was filed in this case. *See* N.C. Gen. Stat. § 160D-605 (2020). However, the Session Law enacting North Carolina General Statute Section 160D-605 stated "[v]alid local government development regulations" in effect when the amendments became effective "remain in effect but local governments shall amend those regulations to conform to the provisions of" the amendments "on or before July 1, 2021[;]" in other words, local governments had approximately one year to comply with the amendments. *See* 2020 N.C. Sess. Laws 25, § 51(b). Here, both parties and the trial court relied on North Carolina General Statute Section 153A-341(b) in the proceeding below, and no party addresses whether Defendant's zoning ordinance is compliant with North Carolina General Statute Section 160D-605.

matter affected by the zoning ordinance and who is directly and adversely affected thereby." Defendant also argued the municipal plaintiffs must show special damages "distinct from the rest of the community."

On 24 May 2021, the trial court held a hearing on Defendant's motion to dismiss. As to the first claim regarding North Carolina General Statute Section 153A-341(b), the trial court allowed Defendant's motion and dismissed the claim as to all parties, stating "[t]he [c]ourt finds that the consistency statement adopted by the Richmond County Board of Commissioners is sufficient under N.C. Gen. Stat. § 153A-341(b) and is, therefore, not subject to further review by the [c]ourt." As to the second claim that the Board of Commissioners "failed to consider all permissible uses in the Heavy Industrial zoning district[,]" the trial court denied the motion to dismiss. Further, the trial court denied Defendant's motion to dismiss for lack of standing under Rule 12(b)(1) as to the City of Hamlet, but granted the motion as to lack of standing as applied to Plaintiff.

On 6 July 2021, Plaintiff timely appealed "the portion of the [trial court's] Order granting the Motion to Dismiss as to the Town of Dobbins Heights for lack of standing pursuant to N.C. R. Civ. P. 12(b)(1)."

Originally, this Court dismissed Plaintiff's appeal as interlocutory, holding Plaintiff "failed to demonstrate a substantial right that would be impacted by this Court's failure to immediately hear its appeal[.]" *See Gardner v. Richmond Cnty.*, No. COA21-600, 288 N.C. App. 637, 885 S.E.2d 862, slip op. at 3 (2023) (unpublished).

On discretionary review, our Supreme Court held Plaintiff "did more than baldly assert a right of immediate appeal under *Creek Pointe*[,]" and "adequately explained why the particular facts of this case satisfy the substantial rights test based on the holding in *Creek Pointe*." *Gardner v. Richmond Cnty.*, 386 N.C. 594, 595, 906 S.E.2d 464 (2024) (citation omitted). Our Supreme Court reversed and remanded to this Court to "address the parties' competing arguments regarding the issue of standing." *Id.*

## II.    Standing

Plaintiff argues it has standing to challenge Defendant's rezoning amendment under the North Carolina Declaratory Judgment Act ("DJA"), N.C. Gen Stat. § 1-253 (2023), as well as the standard established by our Supreme Court's holding in *Committee to Elect Dan Forest v. Employees Political Action Committee (EMPAC)*, 376 N.C. 558, 853 S.E.2d 698 (2021). Defendant argues, however, Plaintiff "mischaracterizes the standing analysis in *Committee to Elect Dan Forest*" and has not "satisf[ied] the DJA's requirements to bring a claim under the Act." Further, Defendant also argues Plaintiff was required to allege special damages that were separate and distinct from the rest of the community to have standing. We reverse the trial court's order granting Defendant's motion to dismiss as Plaintiff's allegations assert standing to challenge Defendant's rezoning decision and it was not required to plead special damages.

"Standing is properly challenged by a 12(b)(1) motion to dismiss, or 12(b)(6)

motion to dismiss for a failure to state a claim upon which relief may be granted." *Fairfield Harbour Prop. Owners Ass'n, Inc. v. Midsouth Golf, LLC*, 215 N.C. App. 66, 72, 715 S.E.2d 273, 280 (2011) (citation omitted). This Court reviews a trial court's granting of a motion to dismiss for lack of standing *de novo*:

> A ruling on a motion to dismiss for want of standing is reviewed de novo. In our de novo review of a motion to dismiss for lack of standing, we view the allegations as true and the supporting record in the light most favorable to the non-moving party. In our analysis of standing, we also consider that North Carolina is a notice pleading jurisdiction, and as a general rule, there is no particular formulation that must be included in a complaint or filing in order to invoke jurisdiction or provide notice of the subject of the suit to the opposing party.

*Metcalf v. Black Dog Realty, LLC*, 200 N.C. App. 619, 625, 684 S.E.2d 709, 714 (2009) (citations and quotation marks omitted).

In *Taylor v. City of Raleigh*, our Supreme Court determined a party has standing to challenge a rezoning ordinance when they have "a specific personal and legal interest in the subject matter affected by the zoning ordinance and . . . is directly and adversely affected thereby." 290 N.C. 608, 620, 227 S.E.2d 576, 583 (1976) (citations omitted). Following *Taylor*, in light of the Supreme Court of the United States' decision in *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 119 L. Ed.2d 351 (1992), this Court applied a three-part test in determining whether a party had standing to challenge legislative rezoning decisions:

> The three elements of standing are:

(1) "injury in fact"—an invasion of a legally protected interest that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Morgan v. Nash Cnty.*, 224 N.C. App. 60, 65, 735 S.E.2d 615, 619 (2012) (citations and quotation marks omitted). The North Carolina Supreme Court further discussed statutorily conferred standing in *Committee to Elect Dan Forest*:

> In summary, our courts have recognized the broad authority of the legislature to create causes of action, such as "citizen-suits" and "private attorney general actions," even where personal, factual injury did not previously exist, in order to vindicate the public interest. *In such cases, the relevant questions are only whether the plaintiff has shown a relevant statute confers a cause of action and whether the plaintiff satisfies the requirements to bring a claim under the statute.* There is no further constitutional requirement because the issue does not implicate the concerns that motivate our standing doctrine. The existence of the legal right is enough.

*Comm. to Elect Dan Forest*, 376 N.C. at 599, 853 S.E.2d at 727-28 (emphasis added) (citation omitted). Our Supreme Court held the North Carolina Constitution does not impose a requirement to allege an "injury in fact" when challenging the validity of a statute, but instead that limit is imposed as "a rule of prudential self-restraint" in cases challenging the constitutionality of government action to ensure our courts only address actual controversies. *Id.* at 608, 853 S.E.2d at 733. As to establishing a specific claim under a statute:

> When a person alleges the infringement of a legal right arising under a cause of action at common law, a statute, or the North Carolina Constitution, however, the legal injury itself gives rise to standing. The North Carolina Constitution confers standing to sue in our courts on those who suffer the infringement of a legal right, because "every person for an injury done him in his lands, goods, person, or reputation shall have remedy by due course of law." N.C. Const. art. I, § 18, cl. 2. Thus, when the legislature exercises its power to create a cause of action under a statute, *even where a plaintiff has no factual injury and the action is solely in the public interest*, the plaintiff has standing to vindicate the legal right so long as he is *in the class of persons on whom the statute confers a cause of action*.

*Id.* (emphasis added) (citation, quotation marks, and footnote omitted). As to showing a plaintiff was among "the class of persons on whom the statute confers a cause of action[,]" *see id.*, the Court further explained *via* a footnote:

> Showing a party falls within the class of persons on whom the statute confers a cause of action may require a showing of some special injury depending on the statutory terms. For instance, our zoning statutes confer standing to maintain a cause of action in the nature of certiorari appealing a quasi-judicial zoning action on certain classes of persons, including persons who will suffer special damages as the result of the decision being appealed. In certain cases, a cause of action may be implied from the statutory scheme. For example, to be entitled to administrative hearing under the NCAPA, a petitioner must show they are a "party aggrieved" by agency action, but where the underlying organic statute does not expressly create a right to a hearing, we have nevertheless held that those who alleged sufficient injury in fact to interests within the zone of those to be protected and regulated by the underlying statute, would have a right to an administrative hearing under the NCAPA as a "person aggrieved."

*Id.* at 608 n. 51, 853 S.E.2d at 733 n. 51 (citations, quotation marks, and brackets omitted).

Under our Supreme Court's decision in *Committee to Elect Dan Forest*, a two-step analysis determines whether a plaintiff has standing to challenge a legislative zoning amendment. First, it must be determined whether an alleged statute confers a cause of action to a plaintiff. *See id.* at 599, 853 S.E.2d at 727. If a statutory cause of action is conferred, it must then be determined whether the plaintiff has satisfied and sufficiently alleged the statutory requirements in bringing a claim. *See id.*

Defendant does not challenge the first step in the analysis, conceding the DJA *does* confer a legal right and cause of action on a Plaintiff. As for the second step in the analysis, whether Plaintiff has "satisfie[d] the requirements to bring a claim under the statute[,]" *id.*, the DJA provides:

> Any person . . . whose rights, status or other legal relations are *affected by* a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise, and obtain a declaration of rights, status, or other legal relations thereunder.

N.C. Gen. Stat. § 1-254 (2023) (emphasis added). Under the DJA, so long as Plaintiff sufficiently alleged it was "affected by" Defendant's decision to rezone the Property, Plaintiff is within the class of persons upon whom the DJA confers a cause of action, and Plaintiff is "guarantee[d] standing to sue" and seek a declaratory judgment to clarify its legal rights and relations. *See Comm. to Elect Dan Forest*, 376 N.C. at 607,

853 S.E.2d at 733. Defendant contends Plaintiff is not among the class of persons sufficiently "affected by" the rezoning ordinance and does not have standing to challenge the ordinance.

As to whether Plaintiff has sufficiently alleged it was "affected by" the rezoning decision, Plaintiff refers this Court to the allegations of the complaint and argues the allegations sufficiently allege the infringement of a legal right. Defendant, however, argues the holding in *Taylor* is still the sole test to determine whether a plaintiff is sufficiently "affected by" a zoning decision and that *Committee to Elect Dan Forest* does not abrogate *Taylor*. Defendant contends, under *Taylor*, Plaintiff has not met the standard in alleging it was "directly and adversely affected" by the zoning decision. *See Taylor*, 290 N.C. at 620, 227 S.E.2d at 583.

To an extent, we agree with Defendant's argument that *Committee to Elect Dan Forest* does not abrogate *Taylor*; instead, it lays out a broader framework within which *Taylor* fits. In *Taylor*, our Supreme Court determined municipal zoning ordinances may only be challenged through the DJA "by a person who has a specific personal and legal interest in the subject matter affected by the zoning ordinance and who is directly and adversely affected thereby." *Id.*

In *Taylor*, the plaintiff landowners challenged a rezoning ordinance that would allow the defendant to construct new apartment buildings and townhomes. Our Supreme Court held "[t]he undisputed evidence discloses that the impact of the rezoning ordinance on any of the plaintiffs was minimal." *Id.* In support of this

holding, the Court noted "[t]he property of [the] plaintiffs Dunn on Boxwood Drive is one-half mile or more from the northern (closest) boundary of the rezoned 39.89 acres and the property of the other plaintiffs is farther from said northern boundary." *Id.* Additionally, "[p]rior to the bringing of this action neither [the] plaintiffs nor any of those who protested the rezoning of the entire 85-acre tract had attacked, by protest or by lawsuit, the rezoning of the 39.89 acres farthest from them." *Id.* The rezoning amendment at issue also "did not, for the first time, authorize multi-family dwellings in the area; it merely increased the permissible types and units of dwellings." *Id.* at 621, 227 S.E.2d at 583-84. The *Taylor* Court concluded:

> On this record we would be unwilling to hold that plaintiffs have established that they are persons aggrieved by the rezoning ordinance. However, in the circumstances here involved, we do not base decision solely on the ground [the] plaintiffs are not sufficiently directly and adversely affected by the rezoning ordinance to entitle them to attack it. Rather, we treat [the] plaintiffs' tenuous standing as a circumstance in considering whether [the] plaintiffs' belated attack on the rezoning ordinance is barred by laches.

*Id.* at 621, 227 S.E.2d at 584 (citation omitted).

We believe the facts presented here, and the allegations in Plaintiff's complaint, taken as true and in the light most favorable to Plaintiff are distinguishable from those present in *Taylor*. Here, unlike *Taylor*, the proposed rezoning ordinance would completely change the permitted uses of the Property at issue from primarily residential to wholly Heavy Industrial. *See id.* This rezoning

would explicitly allow for the erection of International Tie's biochar production facility, an operation entirely different from residential land use.

In the complaint, Plaintiff clearly alleges how the erection of this biochar facility would directly and negatively impact the community, such as the burning of carcinogens, releasing a number of "toxic and harmful air pollutants," potential contamination to local water supply, and "traffic from industry" that "would disproportionally affect the road network of" Plaintiff. We note the only differences between the allegations of the municipal plaintiffs are that the City of Hamlet owns the public water supply system installed in Marks Creek, even though this system "serves over 10,000 people, including the residents of the City of Hamlet" *and* Plaintiff, and that there is a small difference between the proximity of each municipality's borders to the Property.

Plaintiff has satisfied the requirements to bring a claim under the DJA in sufficiently alleging it was "affected by" Defendant's rezoning ordinance. The DJA establishes a "legal right" for Plaintiff to challenge Defendant's rezoning ordinance, and the assertion of an "injury in fact" was not required for Plaintiff to have standing to challenge the ordinance. *See Comm. to Elect Dan Forest*, 376 N.C. at 608, 853 S.E.2d at 733. Further, even in applying the standard in *Taylor*, Plaintiff has sufficiently alleged a direct and adverse effect from the rezoning amendment.

As for Defendant's second argument asserting Plaintiff was required to allege special damages, separate and distinct from the rest of the community, we do not

agree. In *Village Creek Property Owners' Association Inc. v. Town of Edenton*, this Court considered whether "a party seeking to challenge a zoning ordinance by way of a declaratory judgment action is required to allege special damages[.]" 135 N.C. App. 482, 485, 520 S.E.2d 793, 795 (1999). In *Village Creek*, the "[d]efendants argue[d] [the p]laintiffs' complaint was properly dismissed for lack of standing because [the p]laintiffs failed to allege special damages in their complaint." *Id.* (footnote omitted). This Court disagreed, concluding:

> A party has standing to challenge a zoning ordinance in an action for declaratory judgment only when it has a specific personal and legal interest in the subject matter affected by the zoning ordinance and is directly and adversely affected thereby. The standing requirement for a declaratory judgment action is therefore similar to the requirement that a party seeking review of a municipal decision by writ of certiorari suffer damages distinct from the rest of the community. When a party seeks review by writ of certiorari, however, our courts have imposed an additional requirement that the party allege special damages in its complaint. This requirement arises from N.C. Gen. Stat. § 160A-388(b) and N.C. Gen. Stat. § 160A-388(e), which allow only "aggrieved" persons to seek review by writ of certiorari.
>
> In contrast, the Declaratory Judgment Act, authorizing the filing of declaratory judgment actions, does not require a party seeking relief be an "aggrieved" person or to otherwise allege special damages. Furthermore, our courts have not previously held that special damages must be alleged in a declaratory judgment action.
>
> . . . .
>
> Because the zoning statute (the source of the requirement that special damages be alleged in the context of writ of

- 15 -

certiorari petitions) does not require parties to be "aggrieved" in order to file a declaratory judgment action and because the Declaratory Judgment Act does not require a pleading of special damages, we hold it is not required. [The p]laintiffs' complaint should therefore not be dismissed for lack of standing based on [the p]laintiffs' failure to allege special damages.

*Id.* at 485-86, 520 S.E.2d at 795-96 (citations, quotation marks, ellipses, emphasis, and footnote omitted).

Further, this Court in *Village Creek* noted:

We are aware of this Court's opinion in *Davis v. City of Archdale*, 81 N.C. App. 505, 508, 344 S.E.2d 369, 371 (1986), which states a party challenging a rezoning ordinance via a declaratory judgment action "must allege and show damages distinct from the rest of the community." *Id.* (citing *Heery*, 61 N.C. App. at 612, 300 S.E.2d at 869). The North Carolina Supreme Court addressed the *Davis* opinion in *County of Lancaster v. Mecklenburg County*, 334 N.C. 496, 503–04 n. 4, 434 S.E.2d 604, 610 n. 4 (1993), and, without deciding the issue, noted that *Davis* "alludes to a requirement for 'special damages' distinct from those of the rest of the community to confer standing to challenge a rezoning." *Id.* The *Lancaster* court also noted, however, that the test for standing provided in *Davis* was taken from cases challenging standing in quasi-judicial, rather than legislative, actions. *Id.* We therefore do not read *Davis* as requiring a party challenging a legislative zoning decision in a declaratory judgment action to allege special damages in its complaint.

*Id.* at 486 n. 4, 520 S.E.2d at 796 n. 4. Therefore, challenges to quasi-judicial zoning decisions require a pleading of special damages, but challenges to legislative zoning decisions do not. *See id.* In distinguishing quasi-judicial zoning decisions from legislative zoning decisions, this Court in *Kerik v. Davidson County* explained:

> [W]e recognize that zoning decisions regarding conditional use and special use permits are quasi-judicial in nature, and thus require judicial review[.]
>
> . . . .
>
> However, in the case *sub judice,* we are dealing with a Board of Commissioners' rezoning decision.
>
> . . . .
>
> Accordingly, adoption, amendment, or repeal of a zoning ordinance is a legislative decision that must be made by the elected governing board—the city council or the county board of commissioners[.] In other words, rezoning is a legislative act[.]

145 N.C. App. 222, 227-28, 551 S.E.2d 186, 190 (2001) (citations, quotations marks, original brackets, and emphasis omitted).

Here, Defendant's rezoning amendment was a legislative act decided by the Board of Commissioners. Because this amendment was legislative, not quasi-judicial, Plaintiff was *not* required to allege special damages within its complaint, separate and distinct from the general community.

For the foregoing reasons, Plaintiff sufficiently alleged it was "affected by" Defendant's rezoning ordinance. Plaintiff is within the "class of persons" upon which the DJA has conferred a legal right and cause of action to challenge the ordinance. This alleged "infringement of a legal right" was sufficient for Plaintiff to obtain standing, and Plaintiff was not further required to allege an "injury in fact," nor special damages.

### III.   Conclusion

Plaintiff's complaint sufficiently alleged it was "affected by" Defendant's rezoning ordinance, allowing it standing under the DJA to bring its declaratory judgment action. Because Plaintiff has sufficiently asserted standing, the trial court erred in granting Defendant's 12(b)(1) motion to dismiss. We reverse the trial court's order granting Defendant's motion to dismiss as applied to Plaintiff and remand.

REVERSED AND REMANDED.

Judges TYSON and ZACHARY concur.